**Naseem Salman AL–HARBI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 98–70828.

United States Court of Appeals, Ninth Circuit.

March 25, 2002.

---

Before: KLEINFELD, TASHIMA and BERZON, Circuit Judges.

## ORDER

In 1996 Naseem Salman Al–Harbi was brought by American forces to United States territory from northern Iraq, a refuge of Iraqi insurgents hostile to the reign of Saddam Hussein, as part of a large evacuation effort led by United States government agencies. On the merits, we previously granted Al–Harbi's Petition for Review of an Order of the Board of Immigration Appeals. *See Al–Harbi v. INS,* 242 F.3d 882 (9th Cir.2001). We must now decide whether Al–Harbi's request for attorneys' fees was timely filed, and if so, whether he is entitled to fees. We conclude that the request was timely, but that no fees should be awarded.

## BACKGROUND

In our decision filed on March 9, 2001, Al–Harbi prevailed on his Petition for Review.[1] The government had until April 23, 2001 to file a petition for panel rehearing or for rehearing en banc, but the government declined to file either request. The mandate was issued seven days later, on April 30, 2001. The 90 days in which the government could have appealed to the Supreme Court for a writ of certiorari ran on June 7, 2001. *See* 28 U.S.C. § 2101(c) (allowing the government to petition for certiorari "within ninety days after entry

of ... judgment"). Al–Harbi filed his request for attorneys' fees on July 6, 2001.

## DISCUSSION

Circuit Rule 39–1.6 states that "a request for attorneys' fees, including a request for attorneys' fees and expenses in administrative agency adjudications under 28 U.S.C. 2412(d)(3), shall be filed ... within 14 days from the expiration of the period within which a petition for rehearing or suggestion for rehearing en banc may be filed ...." 9th Cir. R. 39–1.6. The Rule is qualified, however, by the phrase "[a]bsent a statutory provision to the contrary."

In *Bianchi v. Perry,* 154 F.3d 1023, 1025 (9th Cir.1998), we recognized that the Equal Access to Justice Act ("EAJA") contains a statutory provision to the contrary. Under the EAJA, applications for awards of attorneys' fees must be filed "within 30 days of final judgment." 28 U.S.C. § 2412(d)(1)(B). Thus, to the extent that Ninth Circuit Rule 39–1.6 is inconsistent with the EAJA, the Circuit Rule is inapplicable, and the EAJA controls.

The dispute in this case centers on when the 30 day filing period under the EAJA begins to run. Although "[t]raditionally, a 'final judgment' is one that is final and appealable," *Melkonyan v. Sullivan,* 501 U.S. 89, 95, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991) (citing Fed.R.Civ.P. 54(a) and *Sullivan v. Finkelstein,* 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990)), Congress amended the EAJA in 1985 to define "final judgment" as "a judgment that is final and *not* appealable." 28 U.S.C. § 2412(d)(2)(G) (emphasis added).

We have previously acknowledged that under this statutory language, there is

---

**1.** We do not recite the underlying facts here, because they can be found in the prior opinion, *Al–Harbi v. INS,* 242 F.3d 882, 885–87 (9th Cir.2001) (*Al–Harbi I*).

more than one plausible interpretation of "final judgment." *See Bianchi*, 154 F.3d at 1024. *Bianchi* noted that we have said in dictum, outside of the EAJA context, that a federal appellate judgment is final when the mandate is spread in the district court. *Id.* (citing *Calderon v. United States Dist. Court (Beeler)*, 128 F.3d 1283, 1286 n. 2 (9th Cir.1997)). *Bianchi* recognized as well that both the Seventh Circuit in *Kolman v. Shalala*, 39 F.3d 173 (7th Cir.1994), and the Eleventh Circuit in *Myers v. Sullivan*, 916 F.2d 659 (11th Cir.1990), had indicated that for EAJA purposes, a judgment is not final until the time for filing a petition for writ of certiorari has expired. *See Bianchi*, 154 F.3d at 1024. Because the petition before it would have been timely either way, the *Bianchi* court left open the question of whether "a decision should be treated as 'final and not appealable' for purposes of the Equal Access to Justice Act when the mandate issues or when the government's time to petition for certiorari expires." *Id.* at 1025. Here, though, the determination of that question is essential to deciding whether or not the petition was timely filed, as it is undisputed that Al–Harbi filed his fee application more than 30 days after the mandate issued but less than 30 days after the time to petition for certiorari had expired.[2]

Every other circuit court to consider the issue has concluded that the 30–day period during which an applicant can file for EAJA fees begins to run only after the 90–day time for filing a petition for writ of certiorari with the Supreme Court has expired. *See Singleton v. Apfel*, 231 F.3d 853, 855 n. 4 (11th Cir.2000) (finding application timely because "[i]n 4759 cases in which a final judgment has been rendered by a court of appeals, EAJA applications

must be filed within 120 days of the day the court of appeals enters judgment.") (citing *Myers*, 916 F.2d at 671); *Kolman*, 39 F.3d at 175 (noting that the 30–day clock to file a fees petition would begin to run "upon the expiration of the time for seeking review of the judgment in the Supreme Court"); *Federal Election Comm'n v. Political Contributions Data, Inc.*, 995 F.2d 383, 385–86 (2d Cir.1993) (finding that the 30–day EAJA clock did not begin to run until the deadline for an application for certiorari had passed); *Taylor v. United States*, 749 F.2d 171, 175 (3d Cir.1984) ("The thirty days within which to request fees and expenses under the EAJA would not ordinarily begin to run until the time in which the government could petition for certiorari had expired."). *See also Youngdale & Sons Constr. Co. v. United States*, 31 Fed. Cl. 167, 175 (1994) (holding that the 30–day limitations period "began to run at the earliest on ... the last day under the 90–day rule in which it could have filed a petition for review in the Supreme Court.").

Although the government argues that the discretionary nature of certiorari jurisdiction means that the judgment is not "appealable" after the circuit court's decision, implicit in the above decisions is a rejection of that contention. *See, e.g., Political Contributions Data, Inc.*, 995 F.2d at 385–86 (finding that time to appeal a 'final judgment' had not expired because the losing party in the court of appeals "had retained the absolute right to change its mind and apply for *certiorari* at any time up until the deadline for such an application"); *Taylor*, 749 F.2d at 174–75 (holding that "final judgment" arises "when the government's right to appeal the order has lapsed," which ordinarily occurs when "the time in which the gov-

**2.** Al–Harbi filed his fee request on July 6, 2001, which was 67 days after the mandate issued and 29 days after time to petition for certiorari had expired.

ernment could petition for certiorari had expired"). We reject the contention as well.

The "appealable" language is at least ambiguous as applied to the possibility of seeking Supreme Court review: It could mean subject to an appeal of right, or it could mean subject to review by a higher court, whether of right or not. The legislative history and our flexible approach to interpreting the filing requirements of the EAJA support the latter interpretation. *See Defenders of Wildlife v. Norton,* 258 F.3d 1136, 1142 n. 8 (9th Cir.2001) ("When the plain language of a statute is ambiguous, courts may 'examine the textual evolution of the [contested phrase] and the legislative history that may explain or elucidate it.' ") (alteration in original) (quoting *United States v. R.L.C.,* 503 U.S. 291, 298, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992)).

"[W]hen Congress re-enacted the EAJA in 1985, it sought to clarify its intent by defining final judgment in a manner that would avoid the 'overly technical' approach previously taken by some courts." *Papazian v. Bowen,* 856 F.2d 1455, 1456 (9th Cir.1988). *See also* H.R.Rep. No. 120, 99th Cong., 1st Sess. 18 n. 26, *reprinted in* 1985 U.S.C.C.A.N. 132, 146 n. 26 ("This section should not be used as a trap for the unwary resulting in the unwarranted denial of fees"); *Myers,* 916 F.2d at 668 (finding that the 30–day requirement "should be interpreted broadly and that overtechnical constructions of the requirement should be avoided."). Additionally, although not controlling, it is of some significance that one Committee Report addressed precisely the question before us and concluded that "appealable" included discretionary appeals. The House Report states that "if the government does not appeal an adverse decision, the thirty-day period would begin to run upon expiration of the time for filing notice of appeal or a petition for certiorari.

Thus appealable orders include all discretionary appeals and include writs of certiorari." H.R.Rep. No. 120, 99th Cong., 1st Sess. 18 n. 26, *reprinted in* 1985 U.S.C.C.A.N. 132, 146 n. 26. Interpreting the timeliness provision as the other circuit courts have done, moreover, avoids the possibility that multiple fee applications will be necessary, a weighty consideration given that EAJA fees are intended specifically for individuals with limited resources. *See Myers,* 916 F.2d at 667.

For all these reasons, we agree with the other circuits and "construe[ ] the Act's definition of 'final judgment' as designating the date on which a party's case has met its final demise, such that there is no longer any possibility that the district court's judgment is open to attack." *Id.* at 669 (internal quotations and citation omitted).

Because Al–Harbi's fee request was timely, we turn to the merits of that request.

■ Al–Harbi is not entitled to an award of attorneys' fees under the EAJA in the present circumstances, we conclude. The EAJA allows an award of attorneys' fees only if the court finds that the government was not "substantially justified," or if "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "Substantial justification" in this context means "justification to a degree that could satisfy a reasonable person," *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). "In making a determination of substantial justification, the court must consider the reasonableness of both 'the underlying government action at issue' and the position asserted by the government in 'defending the validity of the action in court.' " *Bay Area Peace Navy v. United States,* 914 F.2d 1224, 1230 (9th Cir.1990). Further, when we decide whether the government's litigation posi-

tion is substantially justified, "the EAJA ... favors treating a case as an inclusive whole, rather than as atomized line items." *United States v. Rubin,* 97 F.3d 373, 375 (9th Cir.1996), *quoting Comm'r, INS,* 496 U.S. 154, 161–62, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).

■ Applying these standards, we conclude for two reasons that this is the decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in "reasonable, substantial and probative evidence in the record." *Al–Harbi I,* 242 F.3d at 888, quoting *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

The immigration judge ("IJ") had decided against Al–Harbi in part on the ground that Al–Harbi had participated in the persecution of others. We did not resolve in *Al–Harbi I* whether this decision was sustainable, as the Bureau of Immigration Appeals ("BIA") had not reached the question and the INS abandoned it here. So we never had occasion to determine whether the agency's action was proper on the ground the INS had originally invoked in denying asylum and on which the IJ had in part relied. Without doing so now, we observe that the IJ's determination that Al–Harbi did not meet his burden of proof concerning his non-participation in the persecution of others appears substantially justified. *See* 8 C.F.R. § 208.13(c)(2)(ii).

Looking at the government's litigation strategy, we note that we upheld the government's central positions in this appeal—that Al–Harbi's testimony was not to be credited at all, and that he did not prove that he had been subjected to past persecution. The argument that there was adequate evidence in the record to prove a well-founded fear of persecution even if Al–Harbi was entirely discredited and whether or not Al–Harbi was a member of a dissident group in Iraq was articulated only relatively briefly in Al–Harbi's presentation to this court. Al–Harbi devoted most of his briefs to proving instead that it was improper for the BIA to conclude that he was not an Iraqi National Congress member, so the government understandably spent much of its energy in this litigation rebutting that argument. As to that point, we neither accepted nor rejected the government's litigation position in our prior opinion, as we decided the case without reaching the question. Our very failure to do so, however, is indicative of our view that the government's litigation position on the question of Al–Harbi's actual political opinion was sufficiently substantially justified on the record before us as to preclude ready rejection. *See* 242 F.3d at 891 n. 10. Under these unique circumstances, *Rubin* requires that we hold the government's litigation position as a whole substantially justified, albeit not ultimately adequate to sustain the agency's decision. *See* 97 F.3d at 375.

## CONCLUSION

We conclude that where there has been an appellate decision, the term "final judgment" in the EAJA refers to the expiration of the time for filing a petition for certiorari in the Supreme Court. Al–Harbi's 30 day period began to run on June 7, 2001, the last day that the government could have filed a petition for certiorari in the Supreme Court, and it expired on July 7, 2001. Al–Harbi's request for fees was filed on July 6, 2001, and thus it was timely. Nevertheless, the government was substantially justified in its position, and Al–Harbi's request for attorneys' fees is DENIED.