**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SALUJA THANGARAJA,

*Petitioner,*

v.

ALBERTO R. GONZALES,* Attorney General,

*Respondent.*

No. 02-73970

Agency No.
A79-784-820

ORDER

Filed November 3, 2005

Before: Betty B. Fletcher, Edward Leavy, and
Marsha S. Berzon, Circuit Judges.

---

## COUNSEL

Visuvanathan Rudrakumaran, Law Office of Visuvanathan Rudrakumaran, New York, New York, for the petitioner.

Michael L. Tingle, Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for the respondent.

---

*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

15085

## ORDER

BERZON, Circuit Judge:

When this case was last before us, petitioner Saluja Thangaraja's petition for review was granted with respect to her asylum and withholding of removal claims. We remanded the matter to the Board of Immigration Appeals ("BIA") for further proceedings. *See Thangaraja v. Ashcroft*, 2004 WL 1922161 (9th Cir. Aug. 25, 2004) (unpublished memorandum). On November 26, 2004, Thangaraja filed a timely motion for attorney's fees and costs, which was opposed by the respondent. We now grant the motion and award fees at the rates prescribed by the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

## BACKGROUND

Thangaraja is a Tamil native and citizen of Sri Lanka. She attempted to enter the United States in October 2001 at the San Ysidro border crossing. After an interview with an asylum officer, Thangaraja was found to have "demonstrated a credible fear of persecution or torture." She was placed in detention and issued a Notice to Appear in Immigration Court.

In January 2002, Thangaraja submitted an asylum application and appended a declaration describing her claim. The declaration detailed two incidents of prolonged detention by the Sri Lankan Army, during which Thangaraja was taken from her home, interrogated, accused of being a member of the Liberation Tigers of Tamil Eelam ("LTTE"), and physically abused. "I was neither taken to a court nor allowed to seek any legal help."

At Thangaraja's removal hearing on April 10, 2002, she testified similarly, noting that she was never an LTTE member and that she was not politically active in Sri Lanka. No

evidence was presented that Thangaraja was the subject of a legitimate criminal prosecution.

The Immigration Judge ("IJ") denied Thangaraja's applications for relief. The IJ made an adverse credibility determination on two grounds: aspects of Thangaraja's testimonial demeanor, and her inability to answer questions about her trip to the United States "with any kind of specific information, although she took a two month trip on a ship from Colombo to Mexico . . . . When we compare that to the amount of detail that the respondent has presented with regard to the substance of her claim, there is much greater detail."

The IJ also made an alternative merits determination. Assuming Thangaraja's testimony to be credible, the IJ found that she had not met her burden of demonstrating that the alleged persecution was on account of imputed political opinion. The IJ concluded that the "two incidents where she may have been [taken] into custody [were] for questioning on the basis of a legitimate investigation" into whether or not she was an LTTE member. In addition, the IJ determined "that the objective evidence indicates that there are very few instances where women are associated with the Tamil Tigers. The Court . . . finds that there is very little objective evidence to support the respondent's claim that there even would be a question of imputed political opinion to a female youth in Sri Lanka."

On appeal, the BIA summarily affirmed without opinion pursuant to its streamlining regulation, 8 C.F.R. § 1003.1(e)(4).

Our memorandum disposition concluded that all aspects of the IJ's decision concerning Thangaraja's asylum and withholding of removal claims were unsupported by substantial evidence.

## DISCUSSION

### A. Position of the United States

We begin by addressing the Attorney General's argument, contained in his opposition to Thangaraja's fees request, that the IJ's decision in this case is not relevant to our analysis under EAJA of whether "the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). According to the Attorney General, "[t]he agency . . . bore the same relationship to the Board in administrative proceedings as executive departments and agencies bear to courts in judicial proceedings." As a result, the Department of Homeland Security (DHS) is the only relevant actor whose position matters: "It is . . . the agency's defense of the Board's decision before this Court, and not the decision itself, that constitutes the 'position of the United States' for EAJA purposes."

We reject this contention, which completely lacks justification. Pursuant to EAJA, the BIA and IJ decisions we review are as much the "position of the United States" as is the DHS's litigation position. *See* 28 U.S.C. § 2412(d)(2)(D) (" 'position of the United States' means, in addition to the position taken by the United States in the civil action, *the action or failure to act by the agency upon which the civil action is based*" (emphasis added)); *Al-Harbi v. INS*, 284 F.3d 1080, 1084 (9th Cir. 2002) (order) ("In making a determination of substantial justification, the court must consider the reasonableness of both the underlying government action at issue and the position asserted by the government in defending the validity of the action in court." (internal quotation marks and citations omitted)); *Gutierrez v. Barnhart*, 274 F.3d 1255, 1259 (9th Cir. 2001) ("The district court erred in not addressing the reasonableness of the underlying [agency] conduct and basing its denial of fees solely on the government's litigation position."). The IJ's decision in this case, summarily affirmed without opinion by the BIA, is "the action . . . by the agency upon which the civil action is

based," which the statute requires us to consider in determining whether the "position of the United States" was substantially justified. 28 U.S.C. § 2412(d)(2)(D).

Moreover, the DHS's analogy to judicial proceedings is misplaced. Both the Executive Office for Immigration Review (EOIR), to which the BIA and the Immigration Court belong, and the DHS are part of the executive branch of the United States government, despite their mutual independence. The BIA's decision in this case was rendered before the March 1, 2003 effective date of the Homeland Security Act of 2002, Pub. L. 107-296, § 471, 116 Stat. 2135 (2002), which assigned former Immigration and Naturalization Service functions to the DHS while leaving the adjudicative functions of IJs and the BIA within the Department of Justice. *See generally Lagandaon v. Ashcroft*, 383 F.3d 983, 987 n.3 (9th Cir. 2004). Nothing in that reorganization, however, affects our conclusion that the "position of the United States" as defined by EAJA encompasses both the DHS's litigation position and the underlying agency decision rendered by the BIA or an IJ, as the manner in which responsibilities are divided within the executive branch is immaterial to determining what the statutory language requires.

## B. Substantial Justification

"The government bears the burden of demonstrating substantial justification." *Gonzales v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005). Our determination that the IJ's decision was not supported by substantial evidence applied a deferential standard of review, which precludes relief absent a conclusion that "no reasonable factfinder" could have reached the agency's result. *See, e.g.*, *Hasan v. Ashcroft*, 380 F.3d 1114, 1119 (9th Cir. 2004). In the context of attorney's fees determinations, we have held that: " 'Substantial justification' is equated with 'reasonableness.' . . . The government's position is 'substantially justified' if it 'has a reasonable basis in law and fact.' " *Ramon-Sepulveda v. INS*,

863 F.2d 1458, 1459 (9th Cir. 1988) (quoting *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988)); *see also Al-Harbi*, 284 F.3d at 1085 ("Substantial justification in this context means justification to a degree that could satisfy a reasonable person."). Our holding that the agency's decision of Thangaraja's case was unsupported by substantial evidence is therefore a strong indication that the "position of the United States" in this matter was not substantially justified. Indeed, it will be only a "decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record." *Al-Harbi*, 284 F.3d at 1085.

Aside from the lack of substantial evidence supporting the IJ's grounds of decision, which we enumerated in our disposition, an examination of the Attorney General's chosen litigation position confirms that the "position of the United States" was not substantially justified. At the time the respondent submitted his brief, on March 13, 2004, our most relevant precedents concerning the central issues in this case, demeanor-based credibility determinations and imputed political opinion in the context of Sri Lankan investigations of suspected LTTE members, were available. *See Arulampalam v. Ashcroft*, 353 F.3d 679 (9th Cir. 2003); *Ratnam v. INS*, 154 F.3d 990 (9th Cir. 1998). Yet, neither was cited in the Attorney General's brief. *See Rueda-Menicucci v. INS*, 132 F.3d 493, 495 (9th Cir. 1997) (emphasizing contrary circuit precedent in holding that the government's position in defense of an agency decision was not substantially justified).

Instead, the Attorney General defended the IJ's credibility findings without reference to *Arulampalam*'s controlling discussion of demeanor-based determinations. Moreover, the Attorney General's defense of the IJ's finding concerning the level of detail provided by Thangaraja about her journey to the United States consisted of two unsupported sentences of assertion: "A petitioner testifying on the basis of her own

memory reasonably can be expected to recall each aspect of her entire story with a similar level of detail. Petitioner's inability to fulfill that expectation logically gives rise to the inference that the portion of the story that is more detailed may be the result of coaching, confabulation or deliberate deceit."

Our disposition concluded that the record simply did not support the IJ's critical assessment of Thangaraja's description of her journey by ship. There was no vagueness about the testimony she gave, which was "sufficiently descriptive." *See Akinmade v. INS*, 196 F.3d 951, 957 (9th Cir. 1999). For example, Thangaraja gave a precise figure (50) as an estimate of the number of people on board the ship, and explained sensibly why she could not be more specific about their identities (because she could not speak their language).

The Attorney General's arguments on the merits of Thangaraja's asylum and withholding of removal claims were also not substantially justified. The IJ's decision, defended by the Attorney General, ran squarely counter to our precedent. *Ratnam* held that persecution on account of imputed political opinion had occurred despite the government's assertion that the Sri Lankan authorities were engaged in counter-terrorism efforts, as there was no legitimate criminal prosecution of the petitioner. *See* 154 F.3d at 995 (quoting *Singh v. Ilchert*, 63 F.3d 1501, 1509 (9th Cir. 1995), for the proposition that "if there is no evidence of a legitimate prosecutorial purpose for a government's harassment of a person . . . there arises a presumption that the motive for harassment is political"). The Attorney General's representation that "the IJ concluded reasonably that the arrest, detention and interrogation of [Thangaraja] was done for legitimate investigative purposes" is entirely unsupported by the record, which indicates no potentially culpable activity on Thangaraja's part.

We commend the Attorney General's brief for having drawn the court's attention to the lack of record support for

the IJ's mistaken notion that "there are very few instances where women are associated with the Tamil Tigers." While noteworthy in the context of an otherwise staunch defense of the IJ's decision, this concession does not alone render the "position of the United States" substantially justified. We expect nothing less than such candid and rigorous evaluations of the agency's explanations of its decisions in all parties' briefs. Had this level of searching analysis and measured argument been employed by the Attorney General with respect to the remainder of the IJ's decision, he might have decided to move to remand the proceedings to the agency in order to correct the IJ's errors.[1]

In sum, we conclude that the "position of the United States" was not substantially justified in this case. Thangaraja is therefore entitled to attorney's fees and costs.

## C. Enhanced Fees

Thangaraja claims attorney's fees in the amount of $12,700 for 63.5 hours of her counsel's work, at an hourly rate of $200. The requested hourly rate is higher than the $125 rate contained in EAJA, based on the special factor of "the limited

---

[1]*Commissioner, INS v. Jean*, 496 U.S. 154 (1990), held that "only one threshold determination for the entire civil action is to be made." *Id.* at 159; *see also United States v. Rubin*, 97 F.3d 373, 375-76 (9th Cir. 1996). In so holding, *Jean* quoted legislative history of EAJA suggesting that a subsequent litigation position cannot "cure" an underlying agency action that is not substantially justified. *See* 496 U.S. at 159 n.7 ("Congress' emphasis on the underlying Government action supports a single evaluation of past conduct. *See* H. R. Rep. No. 98-992, pp. 9, 13 (1984) ("[T]he amendment will make clear that the Congressional intent is to provide for attorney fees when an unjustifiable agency action forces litigation, and the agency then tries to avoid such liability by reasonable behavior during the litigation") . . . ."). In the case before us, neither the underlying agency action nor the DHS's litigation position was substantially justified. We need not, therefore, decide whether a substantially justified litigation position could ever "cure" an insufficiently justified underlying agency decision for purposes of EAJA fees.

availability of qualified attorneys for the proceedings involved." 28 U.S.C. § 2412(d)(2)(A). In the alternative, Thangaraja claims fees at the statutory rate.

We have not awarded enhanced hourly rates in immigration cases pursuant to the statutory exception for limited availability of qualified attorneys where the litigation in question required no "distinctive knowledge" or "specialized skill." *See Rueda-Menicucci*, 132 F.3d at 496 (quoting *Pierce*, 487 U.S. at 572). Nevertheless, Thangaraja's counsel contends that an enhanced hourly rate is justified here, because he possesses "special expertise in litigation" through "practicing almost exclusively asylum law for more than 10 years and . . . represent[ing] over 750 individuals in immigration cases."

As in *Rueda-Menicucci*, however, we conclude that "[w]hile we believe that a speciality in immigration law could be a special factor warranting an enhancement of the statutory rate, . . . we find that counsel's specialized skill was not needful for the litigation in question." *Id.*; *cf. Johnson v. Gonzales*, 416 F.3d 205, 213 (3d Cir. 2005) ("Although Johnson's counsel is an experienced attorney who specializes in immigration, he was here faced with a case of straightforward application of the substantial evidence and asylum standards."); *Muhur v. Ashcroft*, 382 F.3d 653, 656 (7th Cir. 2004) (recognizing that "immigration laws are complex and their application often requires knowledge of foreign cultures unfamiliar to most Americans," but concluding that fee enhancement requires a showing by counsel that "knowledge of foreign cultures or of particular, esoteric nooks and crannies of immigration law . . . [was] needed to give the alien a fair shot at prevailing").

We decline to adopt counsel's proposed per se rule that "the practice of immigration law should be classified as a specialty similar to practicing patent law." With respect to the case at hand, beyond generalizing about his experience, counsel has not established that he possessed some "distinctive

knowledge" or "specialized skill" necessary to litigating Thangaraja's case. Enhanced fees are therefore not justified.

Thangaraja requests, in the alternative, that fees be awarded at the statute's prescribed hourly rate. EAJA provides for an upward adjustment of the $125 rate contained in the statute, based on cost-of-living increases. *See* 28 U.S.C. § 2412(d)(2)(A); *Sorenson v. Mink*, 239 F.3d 1140, 1147-49 (9th Cir. 2001). Appropriate cost-of-living increases are calculated by multiplying the $125 statutory rate by the annual average consumer price index figure for all urban consumers ("CPI-U") for the years in which counsel's work was performed, and then dividing by the CPI-U figure for March 1996, the effective date of EAJA's $125 statutory rate. *See Sorenson*, 239 F.3d at 1148.

Pursuant to these calculations, Thangaraja is awarded fees at the hourly rates of $144.43 for 5 hours of work performed by counsel in 2002 and $151.65 for 58.5 hours of work performed by counsel in 2004, for a total award of $9,593.68 in attorney's fees. In addition, Thangaraja is entitled to $407.54 in recoverable costs.

## CONCLUSION

Thangaraja's motion for attorney's fees and costs is granted. Attorney's fees and costs in the amount of $10,001.22 are awarded in favor of Thangaraja and against respondent Gonzales.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2005 Thomson/West.