**Mohamed Nagib Hamada ABOUSHABAN,**
Plaintiff(s),

v.

**Robert S. MUELLER, et al., Defendant(s).**

No. C 06–1280 BZ.

United States District Court, N.D. California.

Feb. 23, 2007.

Kip Evan Steinberg, Law Offices of Kip Evan Steinberg, San Rafael, CA, fro Petitioner.

Edward A. Olsen, United States Attorney's Office, San Francisco, CA, for Respondents.

## ORDER AWARDING PLAINTIFF FEES

ZIMMERMAN, United States Magistrate Judge.

On February 22, 2006, plaintiff filed a complaint seeking a writ of mandamus directing the United States Citizenship and Immigration Services (USCIS) and the Federal Bureau of Investigation (FBI) to adjudicate plaintiff's pending I–485 application for adjustment of status to lawful permanent resident.[1] *See Aboushaban v. Mueller,* 2006 WL 3041086, at *1 (N.D.Cal.). A political asylee since January 22, 1997, plaintiff alleged he filed his application on June 17, 1998.

On October 24, 2006, I granted plaintiff's motion for summary judgment, ordered the USCIS to adjudicate plaintiff's application forthwith, and retained jurisdiction to ensure that my Order was carried out. I also granted the FBI summary judgment because it had finished its limited role in the processing of plaintiff's application. *Id.* at *2–3. On November 6, 2006, the USCIS reported that it had approved plaintiff's application on October 27. *See* Civil Docket No. 29. Following agreement by the parties that no further relief was sought, final judgment was entered on February 21, 2007.[2]

Plaintiff has moved under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), for an award of $46,616.06 in attorney's fees and costs incurred in these proceedings.

To obtain fees under the EAJA, a party must demonstrate: 1) that he attained "prevailing party" status in the underlying action; 2) that the government's position was not "substantially justified"; and 3) that no "special circumstances [make] an award unjust."[3] *See In re Application of Mgndichian,* 312 F.Supp.2d

---

1. Plaintiff named Evelyn C. Upchurch, Acting Director, Nebraska Service Center, USCIS; Emilio T. Gonzalez, Director, USCIS; Michael Chertoff, Secretary of the Dept. of Homeland Security; and Alberto Gonzales, Attorney General, Dept. of Justice. I consider these defendants collectively as the USCIS.

2. Initially, defendants argued that plaintiff's fee application was premature. At a February 21, 2007 hearing, however, defendants concurred in the issuance of the final judgment and waived their procedural objection. Plaintiff's motion is therefore ripe for decision.

3. In addition, the movant must demonstrate that he was a party to the underlying action; that the action was civil; and that his net worth did not exceed two million at the time the action was filed. *See* 28 U.S.C.A. § 2412. Here, the first two elements are clearly met, and plaintiff avers in a declaration that his net worth did not exceed two million dollars at the time of filing. *See* Declaration of Mohamed Aboushaban's ¶ 1. Defendants do not dispute these elements, and I conclude that they are met.

1250, 1255 (C.D.Cal.2003) (citing *I.N.S. v. Jean*, 496 U.S. 154, 158, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990)).

■ To prevail, the party must "succeed on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *U.S. v. Real Property Known as 22249 Dolorosa Street, Woodland Hills, Cal.*, 190 F.3d 977, 981 (9th Cir.1999) (internal quotation marks omitted)). The success must be "gained by judgment or consent decree [affecting] a material alteration of the legal relationship of the parties." *See Perez–Arellano v. Smith*, 279 F.3d 791, 793–94 (9th Cir. 2002) (internal quotation omitted) (applying *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), which rejected the "catalyst theory," under which a party gained prevailing status if he achieved a desired result through voluntary changes brought on by the party's lawsuit, to EAJA applications).

■ Defendants argue that plaintiff did not prevail because the USCIS voluntarily agreed to adjudicate plaintiff's application once he submitted a replacement Supplemental Form (Documentation of Immunization) to the Medical Examination Form I–693 (hereinafter "Supplemental Form"). At that point, defendants assert, plaintiff's claim was moot. Thus, this Court's Order was unnecessary and could not have conveyed prevailing party status to plaintiff. I disagree.

First, my ruling constitutes a binding judgment that altered the legal relationship between the parties in exactly the manner requested by plaintiff. Plaintiff sought and received an order requiring defendants to adjudicate his application in a timely fashion. Plaintiff could have moved to enforce my Order if defendants had failed to act. An order of this kind serves to convey prevailing status. *See Carbonell v. I.N.S.*, 429 F.3d 894, 900–01 (9th Cir.2005) (party who obtained court order incorporating stipulation staying deportation prevailed); *Rueda–Menicucci*, 132 F.3d 493, 495 (9th Cir.1997) (order remanding asylum application for further consideration conferred prevailing status); *Salem v. I.N.S.*, 122 F.Supp.2d 980, 983–84 (C.D.Ill.2000) (same); *Bates v. Nicholson*, 20 Vet.App. 185, 188–90 (2006) (issuance of writ of mandamus compelling administrative review conferred prevailing status); *see also Dabone v. Thornburgh*, 734 F.Supp. 195, 198 (E.D.Pa.1990) (party prevailed in mandamus action resulting in reopening of exclusion proceedings); *Jefrey v. I.N.S.*, 710 F.Supp. 486, 488 (S.D.N.Y. 1989) (party prevailed in mandamus action resulting in swift adjudication of application); *Achaval–Bianco v. Gustafson*, 736 F.Supp. 214, 215 (C.D.Cal.1989) (same).

Second, the defendants' eleventh-hour promise to adjudicate plaintiff's application did not serve to negate the necessity of my Order or somehow remove the judicial imprimatur thereof. Defendants did inform plaintiff on September 18, 2006, that his application would be processed upon submission of a completed Supplemental Form.[4] *See* Defs.' Sur–Reply to Pl's Mot. for Att'y Fees, Decl. of Mark Johnson ¶ 3. By that time, however, plaintiff had waited eight years for his application to be processed. Inasmuch as plaintiff had already submitted one such completed form, and in light of defendants' extended delay, it is not surprising that plaintiff wanted to press forward. Since the motion culminated in a hearing and an order in plaintiff's favor, for purposes of EAJA, plaintiff is a

4. As explained in more detail below, however, the USCIS already had in its files a completed Supplemental Form. The form, however, had been misfiled. *See* Johnson Decl. ¶ 4.

prevailing party in the underlying proceeding.

 ] Once the movant demonstrates prevailing party status, the government bears the burden of proving that its positions were "substantially justified." *See Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir.2005). Whether a position is substantially justified depends on whether it has a " 'reasonable basis in both law and fact.' " *Abela v. Gustafson*, 888 F.2d 1258, 1264 (9th Cir.1989) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)). " 'Substantial justification in this context means justification to a degree that could satisfy a reasonable person.' " *Thangaraja*, 428 F.3d at 874 (quoting *Al–Harbi v. I.N.S.*, 284 F.3d 1080, 1085 (9th Cir.2002)). A position can be justified even if it is not correct. *See In re Application of Mgndichian*, 312 F.Supp.2d at 1261 (quotation marks and citations omitted). In making this determination, however, the court must examine "both the government's litigation position and 'the action or failure to act by the agency upon which the civil action is based.' " *Abela v. Gustafson*, 888 F.2d at 1264 (citing 28 U.S.C. § 2412(d)(2)(D)); *see also Thangaraja*, 428 F.3d at 873.

 I find that several aspects of defendants' pre-litigation conduct lacked substantial justification. In attempting to explain the years of delay experienced by plaintiff, defendants rely primarily on the fact that the law prior to May 11, 2005 forbade the Attorney General from making more than 10,000 permanent resident visas available in a given fiscal year.[5] *See* 8 U.S.C. § 1159(b) (2005). They claim that the number of asylees seeking permanent status ballooned in the years in question, leading to a backlog of over 150,000 by September 1, 2003, and of over 160,000 by

March 1, 2004. *See* Keller Decl. ¶¶ 4, 2. Because the asylum-based adjustment backlog was considered in date-received order according to a list kept by the US-CIS, *see* 8 C.F.R. § 209.2(a)(1), defendants assert that plaintiff's application was processed in due time.

Accepting defendants' claims about the backlog, it is still not clear why plaintiff's application, filed in mid–1998, remained pending for as long as it did. For example, defendants do not discuss how extensive the backlog was in 1998, 1999, 2000, 2001, or 2002. Nor do they explain where plaintiff's application fit into the USCIS's processing queue. Given that applications were to be processed in the order received, knowing that by 2003 there was a large backlog does not explain why plaintiff's application was not processed until 2006. Moreover, just because the Attorney General could make no more than 10,000 visa number available in a given fiscal year does not mean that the USCIS could not process more than 10,000 applications in a year. The restriction on processing seems to have been an internal decision. Keller Decl. ¶ 3. Finally, the continued delay after the visa number restraint was lifted May 11, 2005, is never explained.

A more fundamental problem for defendants is that it appears that plaintiff's application was delayed by defendants' practice of "hiring" the FBI to perform a background or name check on applicants. *See* Pl.'s Reply to Defs.' Opp. to EAJA Mot., Exh. 7 (*Annual Report to Congress, Citizenship and Immigration Services Ombudsman*, June 2006), at 24 ("the name checks are a fee-for-service that the FBI provides the USCIS at its request."). The USCIS requested an FBI name check on December 3, 2002. Keller Decl. ¶ 6. Over the ensuing four years, processing of plain-

---

**5.** Issuance of the visa numbers is the method by which the Attorney General makes adjustment to permanent status available. *See* Keller Decl. ¶¶ 2–4.

tiff's application was largely confined to transferring it from one office to another.[6] It was not until the FBI finished its name check in April 2006—two months after plaintiff filed the underlying action—that the USCIS took decisive action to finally adjudicate the application. *See* Keller Decl. ¶¶ 9–10; Johnson Decl. ¶ 2. Despite the clear connection between the processing of the name check and USCIS's final adjudication, defendants do not explain why the name check was so delayed.[7]

Defendants also seek to blame plaintiff for the delay. Defendants claim that plaintiff filed a deficient Supplemental Form with his application, precluding processing of the application. And while defendants admit that they subsequently misfiled a later-filed corrected form, they opine that plaintiff compounded the problem by failing to inform them in September 2006 that a more recent and complete Supplemental Form existed.

Plaintiff's original Supplemental Form did contain deficiencies. Plaintiff, however, was not informed of them until December 10, 2002. Keller Decl. ¶ 7. Thus, the delay from 1998 through 2002 cannot entirely be put on plaintiff.

In response to the USCIS's request for a corrected form, plaintiff promptly mailed one in February 2003. *See* Pl.'s Reply to Defs.' Opp'n, Exh. 12; *see also id.* at Exh. 10 (Decl. of Philip Hornik ¶¶ 3, 10). It is now undisputed that this form corrected the initial deficiencies.[8] The USCIS, however, misfiled the form. Johnson Decl. ¶ 4. Due to this error, plaintiff was made to complete a third form, which he did in October 2006. Pl.'s Reply to Defs.' Opp'n, at Exh. 15 & 16. Even if the misfiling was an innocent bureaucratic mistake,[9] plaintiff was not informed of the need for a third form until September 15, 2006. Johnson Decl. ¶ 2. The delay from February 2003

---

**6.** The USCIS did request an additional Supplemental Form to plaintiff's Form I–693 on December 10, 2002. Keller Decl. ¶ 7. Besides that, most activity on plaintiff's application was elicited by inquiries from his attorneys. *Cf. id.* at ¶¶ 7–10 *with* Pl.'s Reply to Defs.' Opp'n, Exh. 1 & 3.

**7.** At the February 21 hearing, defendants argued that granting summary judgment for the FBI in the underlying case precludes me from holding the USCIS accountable for the FBI's delays. The defendants also correctly argued that it is not this court's role to tell the FBI how to conduct background checks. It is, however, for this court to determine that four years of unexplained delay occasioned by the name check process is not substantially justified. Insofar as the FBI was acting at the request of the USCIS, and the USCIS knew of the delays inherent in the FBI's processes, it cannot now claim that it should not be held responsible for such delays. I find the FBI's delays attributable to the USCIS. *See, e.g., Shalan v. Chertoff,* 2006 WL 3307512, at *2 (D.Mass.) (rejecting the argument that delay occasioned by the FBI may render the USCIS's position substantially justified); *Singh*

*v. Still,* 470 F.Supp.2d 1064, 1067–68, 2006 WL 3898174, at *3 (N.D.Cal.2006) (rejecting the government respondents' attempts to "divorce themselves" from the FBI's name check processes).

**8.** Throughout this litigation, the USCIS had maintained the position that the second Supplemental Form contained the same deficiencies as the first, and that plaintiff's repeated error partially explained the delays he experienced. It was not until I ordered defendants to file a sur-reply clarifying the deficiencies with the second form that defendants admitted to having misplaced the second, deficiency-free form.

**9.** The argument that plaintiff and his counsel are to blame for not telling Officer Johnson of the presence of the more recent, deficiency-free form lacks substance. Johnson does not claim to have shown the deficient form to plaintiff or to have otherwise identified it. Thus, there is no way plaintiff could have known that Johnson was missing the second form and was actually referring to the first form during the interview.

through September 2006 cannot rightly be put on plaintiff.

The deficiencies in plaintiff's application can only explain perhaps several months of the years of inaction and delay on the application. The FBI's delay in processing plaintiff's name check remains largely unexplained, and the remainder of defendants' arguments do not adequately excuse the delays plaintiff encountered.[10] Like a number of courts before me, I cannot conclude that a reasonable person would find the delays experienced by plaintiff reasonable. *See, e.g., Abela,* 888 F.2d at 1266 (delays forcing plaintiffs to seek relief in district court were not justified); *Shalan v. Chertoff,* 2006 WL 3307512, at *2 (D.Mass.) (undue delay "renders the government's pre-litigation position not 'substantially justified'"); *Salem,* 122 F.Supp.2d at 985 (undue delay was not substantially justified); *Dabone,* 734 F.Supp. at 203 (assertion of overwork did not justify delay). Defendants have failed to meet their burden of demonstrating that the delay in processing plaintiff's was substantially justified.

Nor were the defendants' litigation positions substantially justified. As plaintiff points out, defendants asserted that they had no ministerial duty to adjudicate plaintiff's application within a specified period. *See* Civil Docket No. 23 (Def's Opp'n to Pl.'s Mot. for Sum. J.), at 3. While the pertinent statutes do not specify a time within which an application must be processed, the clear trend of the law is to recognize that the government has a duty to process these and similar applications within a reasonable period of time. *See Aboushaban,* 2006 WL 3041086, at *2 (discussing these duties). Considering the nature and length of the delay, defendants' position was not justified.

The facts of plaintiff's case render defendants' position even less tenable. In their opposition to summary judgment, the defendants' only explanation for the nearly eight year delay was that plaintiff had yet to turn in his Supplemental Form to the Form I–693. As discussed, this explanation addresses a small portion of the delay plaintiff experienced. Defendants' current arguments do not adequately justify these seven years of delay compelling a finding that the defendants' litigation positions were not substantially justified in law and fact.

Finally, there is the question of whether "special circumstances" exist that would make an award of attorney's fees unjust. *See* 28 U.S.C. § 2412(d)(1)(A). Defendants do not raise any circumstances, and I can divine none, that would make an award in this case unjust.

I conclude that plaintiff prevailed in the underlying action and that the defendants' pre-litigation conduct and litigation positions were not substantially justified. Having met the other statutory requirements, and there being no special circumstances to render an award unjust, plaintiff is entitled to an award of reasonable attorney's fees and costs under the EAJA.

█ EAJA provides that attorney's fees shall not be awarded in excess of $125 per

---

**10.** In addition to the problems already discussed, plaintiff may have experienced additional delay stemming from an apparent misclassification of his application. In March 2005 the USCIS mistakenly characterized plaintiff's application as having been filed in March 2002. *See* Pl.'s Reply to Defs.' Opp'n, Exh. 3. This filing date put plaintiff's application on track to be adjudicated sometime between October 2009 and September 2010. Although plaintiff's counsel promptly informed the USCIS of the mistake, it is unclear how long the application has been misclassified or what impact it had on the pace of adjudication. Suffice it to say that this error does not support the defendants' claim that the delay was justified.

hour unless the court determines that an increase in the cost of living or some special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee. 28 U.S.C. § 2412(d)(2)(A). Defendants agree that, should plaintiff be awarded attorney's fees, he should be awarded the statutory rate adjusted for inflation, $171.03 per hour.[11]

Plaintiff, however, requests an increased rate of $350 per hour. He argues that his counsel possesses special expertise required for the successful completion of the instant litigation, and that it would have been nearly impossible to find an attorney to take his case at the statutory rate. Defendants assert in part that the requested rate is excessive insofar as no specialized skill or knowledge was required to litigate this case. Defs. Opp'n to Pl.'s Mot. for Att'y Fees, at *8.

■ The EAJA attorney fee rate cap may be exceeded if three requirements are satisfied: 1) the attorney has "distinctive knowledge or specialized skill"; 2) such knowledge and skills were necessary for the litigation; and 3) similar knowledge and skills could not have been obtained at the statutory rate. *See Love v. Reilly*, 924

F.2d 1492, 1496 (9th Cir.1991); *Pirus v. Bowen*, 869 F.2d 536, 541–42 (9th Cir. 1989); *Lucas v. White*, 63 F.Supp.2d 1046, 1061 (N.D.Cal.1999).

Although plaintiff's counsel possesses substantial experience in immigration matters, and although such matters may indeed be complex, *see Castro–O'Ryan v. I.N.S.*, 847 F.2d 1307, 1312 (9th Cir.1987), defendants are correct that this matter did not demand specialized or distinctive knowledge or skill. The underlying dispute was a relatively straight-forward mandamus action requiring no discovery or evidentiary hearings. Indeed, the summary judgment motion was resolved largely on the basis of a two-page stipulated joint statement of facts. And while the defendants mounted a spirited defense, plaintiff's filings were relatively concise and did not involve unusually difficult questions of law.[12] The adjusted statutory rate of $171.03 per hour provides adequate compensation. *See* 28 U.S.C. § 2412(d)(2)(A).

■ Finally, defendants contend that the hours Mr. Steinberg claims for preparing the EAJA request should be cut in half because the time claimed is disproportionate to the time spent on the merits of the underlying claim.[13] Although the tasks

---

**11.** In his own calculations, plaintiff used the Consumer Price Index for All Urban Consumers (CPI–U) rate for October 2006(211). However, since the time plaintiff made his calculations, the aggregate CPI–U rate for the year 2006 was announced as 209.2. *See http://data/bls.gov/cgi-bin/surveymost.* The $171.03 per hour rate utilizes the 209.2 annual rate. Additionally, I note that the Bureau of Labor Statistics has not yet announced CPI–U rates for 2007. Thus, while some hours were accrued in 2007, I apply the $171.03 rate to all hours billed.

**12.** The cases plaintiff relies on are distinguishable. *Nadler v. I.N.S.*, 737 F.Supp. 658 (D.D.C.1989), for example, involved a more complicated procedural history and fairly complex legal questions concerning whether a decision by an INS district director to deny

an application and certify it for review may moot a contemporaneous civil action. *Douglas v. Baker*, 809 F.Supp. 131 (D.D.C.1992), involved difficult issues of fact and credibility going to whether embassy officials properly denied passports to certain individuals. Insofar as plaintiff proffers cases involving class action proceedings, those cases are obviously inapposite. *See* Decl. of Robert H. Gibbs ¶ 4. A review of the docket of the one case plaintiff cites out of this district, *Chintakuntla, et al., v. I.N.S.*, No. 99–5211 MMC (MEJ) (N.D.Cal. 2002), demonstrates that it involved a putative class action and is likewise distinguishable.

**13.** Defendant does not dispute the 75.2 hours plaintiff billed for time spent on the merits of the case. *See* Defs.' Opp'n to Pl.'s Mot. for Att'y Fees, at 9.

documented in the billing records generally seem reasonable and necessary to the successful adjudication of the plaintiff's EAJA motion, I agree that plaintiff's request must be reduced.

 "[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." *Commissioner, I.N.S. v. Jean,* 496 U.S. 154, 163 n. 10, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990); *see also Nat'l Veterans Legal Services Program v. U.S. Dept. of Veterans Affairs,* 1999 WL 33740260, at *5–*6 (D.D.C.) (applying *Jean* and noting that an overall award should be reduced by the amount of time spent unsuccessfully defending hours eliminated by the court). Here, plaintiff unsuccessfully moved for an increased rate of $350 per hour. I estimate that approximately one-third of the 56 hours claimed for plaintiff's fees litigation relate to this failed request.[14] Accordingly, I find that plaintiff's attorney reasonably expended 37.33 hours in litigating the motion for attorney's fees.

In addition, my independent review of plaintiff's request leads me to discount five hours of paralegal work claimed.[15] Plaintiff is not permitted to claim the attorney fees rate for work of this nature.[16] *See, e.g., In re Application of Mgndichian,* 312 F.Supp.2d at 1266 (distinguishing between paralegal work product and attorney work product). In total, I find that plaintiff's attorney reasonably billed 107.53 hours in litigating this case.

Plaintiff also seeks the recovery of $696.06 in costs. Reasonable costs of any project that is necessary for the preparation of a party's case may be recovered under the EAJA. *See* 28 U.S.C. § 2412(d)(2)(A). Plaintiff supplied a detailed account of the costs incurred. *See* Pl.'s Request for Att'y Fees, Exh. 6; Pl.'s Reply to Defs.' Opp. to EAJA Mot, Exh. 17; Pl.'s Updated Att'y Time Record. I find these costs necessary for the preparation of the action and accordingly award him the full amount of costs requested, $696.06.

For the foregoing reasons, plaintiff's motion for attorney fees and costs is **GRANTED IN PART** as follows: Plaintiff is awarded a total of $19,086.92 in attorney's fees and costs. The total award includes $18,390.86 in attorney's fees (107.53 hours of attorney work multiplied by the adjusted statutory rate of $171.03 per hour) and $696.06 in costs.

---

14. Counsel's time records do not permit a more precise breakdown.

15. *See* Pl.'s Request for Att'y Fees, Exh. 6. (2/27/06, .1 hr for Email to this Court; 2/28/06, .1 hr Requested ADR Handbook; 3/01/06, Received Notices; 3/10/06, .7 hr Proof of Service; 6/13/06; .1 hr Reviewed Rescheduling Order; 7/05/06, .1 hr Received ADR notice; 7/10/06, .1 hr Received Draft; 7/17/06, .1 hr Received Notice; 7/25/06, .1 hr Reviewed Civil Minute Order; 7/26/06 .1 hr Reviewed Scheduling Order; 9/1/06, .5 hr prepared CD; 9/20/06, .1 hr Received document; 9/21/06, .1 Received document; 10/4/06, .5 Prepared CD; 12/19/06, 2 of 3 hrs Figuring the CPI–U).

16. At the February 21 hearing, plaintiff's attorney suggested that the five hours be compensated at $90 per hour. The movant, however, has some burden to demonstrate the reasonableness of the requested award. *See Lucas v. White,* 63 F.Supp.2d 1046, 1057 (N.D.Cal.1999) (citing *Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir.1992)) (noting that a movant must adequately document the hours billed). Plaintiff provided no authority for the proposition that $90 per hour is an appropriate rate to bill for paralegal work. Nor did plaintiff state the rate at which these hours were actually billed.