# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JIANPING LI,
                      *Petitioner,*

            v.

PETER D. KEISLER,* Acting
Attorney General,
                      *Respondent.*

No. 04-73258

Agency No.
A75-731-658

RIGOBERTO MENDOZA-AGUILERA,
                      *Petitioner,*

            v.

PETER D. KEISLER, Acting Attorney
General,
                      *Respondent.*

No. 04-74457

Agency No.
A92-123-198

NAZNIN M.B. JANMOHAMED,
                      *Petitioner,*

            v.

PETER D. KEISLER, Acting Attorney
General,
                      *Respondent.*

No. 06-71068

Agency No.
A97-864-569

ORDER

Filed September 27, 2007

*Peter D. Keisler is substituted for his predecessor, Alberto R. Gon-
zales, as Acting Attorney General of the United States, pursuant to Fed.
R. App. P. 43(c)(2).

13289

Before: Alex Kozinski, Ronald M. Gould and
Consuelo M. Callahan, Circuit Judges.

---

**ORDER**

We consider applications for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), in three immigration petitions for review. Because the applications present similar issues, we consider them together.

*Li v. Keisler*

Petitioner Li, an asylum applicant from China, filed a motion to reopen following the Immigration Judge's ("IJ") in absentia order of removal in his case. Petitioner asserted that he failed to appear for the hearing due to "exceptional circumstances," consisting of a high fever, drainage from his ear, loss of balance, headache and dizziness. In the alternative, petitioner claimed that, pursuant to the Board of Immigration Appeals' ("BIA") decision in *Matter of M-S*, 22 I & N Dec. 349 (BIA 1998), he was not required to demonstrate exceptional circumstances where he did not challenge removability, but rather sought to reopen in order to apply for the discretionary relief of asylum. The IJ found that petitioner had not established exceptional circumstances and denied the motion to reopen without addressing *Matter of M-S*. On appeal to the BIA, petitioner argued that the IJ's failure to address *Matter of M-S* denied him a full and fair hearing and violated due process. The BIA affirmed the IJ's decision, finding that petitioner had not established exceptional circumstances and that the due process claim was groundless.

After petitioner filed his opening brief, respondent moved to remand to the BIA to permit the BIA to consider petitioner's *Matter of M-S* claim and other arguments petitioner raised on appeal. Our Circuit Mediator granted respondent's

motion and filed a remand order on December 16, 2005. The mandate issued the same day.

Petitioner filed an application for attorney's fees under EAJA on March 16, 2006. Respondent opposed the application because (1) it was untimely, (2) petitioner was not the prevailing party, and (3) an award of attorney's fees would be unjust.

## Janmohamed v. Keisler

Petitioner Janmohamed is an Indian citizen of Kenya who feared torture — specifically, female genital mutilation ("FGM") — should she be returned to her native country. After petitioner filed her opening brief, respondent filed an unopposed motion to remand proceedings to the Agency. Without conceding any error in the underlying proceedings, respondent requested a remand to the BIA so that the Agency could reexamine the IJ's analysis of petitioner's application for relief under Article 3 of the United Nations Convention Against Torture. Additionally, respondent acknowledged that the IJ did not explain why, given the credible evidence of petitioner's fear of FGM, petitioner did not establish a well-founded fear of persecution for purposes of asylum under 8 U.S.C. § 1158(b)(1). The Circuit Mediator granted respondent's motion and filed a remand order on August 16, 2006. The mandate issued the same day.

Subsequently, on October 16, 2006 (sixty-one days after issuance of the court's mandate), petitioner filed an application for attorney's fees under the EAJA. Respondent opposed the application because (1) it was untimely, (2) petitioner was not the prevailing party, and (3) an award of attorney's fees would be unjust.

## Mendoza-Aguilera v. Keisler

Petitioner Mendoza-Aguilera filed a motion to reopen before the BIA to apply for a waiver of deportation pursuant

to 8 U.S.C. § 1182(c) ("212(c)") in April 2004. Petitioner asserted that he became eligible for this relief while his appeal had been pending before the BIA in 1996, that his departure from the United States was not pursuant to a legally executed deportation order, and that he was denied effective assistance of counsel when his prior counsel failed to move to reopen.

After petitioner filed his opening brief, respondent moved to remand to permit the BIA to consider whether petitioner became eligible for 212(c) relief while his appeal was pending, and, if so, whether the BIA erred in dismissing petitioner's appeal without providing him an opportunity to seek such relief. In addition, respondent stated that the remand would allow the BIA to address whether petitioner was denied effective assistance of counsel and whether petitioner's departure from the United States was pursuant to a legally executed deportation order under *Wiedersperg v. INS*, 896 F.2d 1179, 1181 (9th Cir. 1990). The Circuit Mediator granted respondent's motion and filed a remand order on January 30, 2006. The mandate issued on the same day.

Petitioner filed an application for attorney's fees under EAJA on March 3, 2006. Respondent opposed the application because it was untimely, and because an award of attorney's fees would be unjust.

## I.   *Timeliness of EAJA Fee Applications.*

As an initial matter, we conclude that petitioners' fee applications are timely. The thirty-day deadline to file an application for attorney's fees under EAJA does not begin to run until after the ninety-day period during which a party may seek a writ of certiorari from the United States Supreme Court. *See* 28 U.S.C. § 2412(d)(1)(B); *Al-Harbi v. INS*, 284 F.3d 1080, 1082-84 (9th Cir. 2002). Further, we held in *Hoa Hong Van v. Barnhart*, 483 F.3d 600, 612 (9th Cir. 2007), that the applicable post-judgment appeal period applies for purposes of EAJA even if entry of the judgment was made pursu-

ant to the government's request. Although *Van* was a Social Security disability benefits appeal and the entry of judgment in question was made at the district court, these differences are not material. Specifically, this situation poses the same dangers of uncertainty and inconsistency that this court resolved in *Van*, and which the statute and its interpretive case law seek to eliminate. *See id.* Thus, we conclude that the thirty-day EAJA fee application period does not begin to run until ninety days after an order remanding an immigration matter to the BIA, even if such an order is at the request of the government. *See* 28 U.S.C. § 2412(d)(1)(B); *Van*, 483 F.3d at 612; *Al-Harbi*, 284 F.3d at 1082-84.

In *Li*, the petitioner's application was timely filed because it was filed ninety-one days after this court's order and mandate issued, within the statutory period. Similarly, in *Janmohamed*, the petitioner's application was timely because it was filed sixty-one days after the issuance of this court's order and mandate, well within the statutory application period. Finally, in *Mendoza-Aguilera*, the petitioner's application was timely because it was filed thirty-two days after the issuance of this court's order and mandate, also within the statutory application period.

## II. *Prevailing Parties in Remanded Immigration Petitions for Review.*

We also find that petitioners satisfy the prevailing party requirement of EAJA, and are therefore eligible for an award of reasonable attorney's fees under 28 U.S.C. § 2412(d)(1)(A). Petitioners have met the prevailing party standard set forth in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources* by establishing that these federal court actions resulted in a "material alteration of the legal relationship of the parties" and that the alteration was "judicially sanctioned." 532 U.S. 598, 604-05 (2001); *see Perez-Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir. 2002) (holding that the *Buckhannon* rule

regarding prevailing party status governs EAJA fee applications).

First, we have previously held in *Carbonell v. INS*, 429 F.3d 894, 899 (9th Cir. 2005), that "litigants who achieve relief other than a judgment on the merits or a consent decree are prevailing parties." In that case, we observed that the petitioner's success in obtaining the desired relief from the federal court is critical to establishing prevailing party status under *Buckhannon*, regardless of whether the federal court's order addressed the merits of the underlying case. *Id.* at 900; *see also Rueda-Menicucci v. INS*, 132 F.3d 493, 495 (9th Cir. 1997).

Petitioner Li's opening brief sought a reopened removal proceeding to apply for asylum and related relief. Our order remanded proceedings to the BIA. Similarly, in *Janmohamed*, the petitioner sought in her opening brief that which our order granted: a remand to the Agency. Finally, the petitioner in *Mendoza-Aguilera* sought a remand to the Agency for review of his 212(c) claim. Following our remand order, the BIA ordered the case remanded to the IJ for consideration of Mendoza-Aguilera's 212(c) application and for consideration of the issues raised by petitioner's opening brief. Thus, the Circuit Mediator's remand orders in all three petitions for review advanced the goals sought by petitioners, and constituted material alterations of the parties' legal relationships for purposes of *Buckhannon*.

Second, an order by a Circuit Mediator is sufficient to satisfy the judicial imprimatur requirement of *Buckhannon*. *See* 532 U.S. at 605. Pursuant to Ninth Circuit Rule 27-7, the court has delegated the authority to enter orders resolving certain motions to deputized court staff, including Circuit Mediators. The authority for deputized court staff to enter orders, such as orders granting unopposed motions to remand cases to administrative agencies, flows directly from the court. *See* General Orders, Appendix A(52). Thus, we conclude that

an order by a Circuit Mediator granting an unopposed motion to remand a case to the BIA pursuant to General Orders, Appendix A(52) bears a sufficient judicial imprimatur to satisfy the prevailing party standard of *Buckhannon*.

### III. *Substantial Justification or Special Circumstances Rendering Award of Fees Unjust.*

Beyond the *Buckhannon* prevailing party inquiry, EAJA requires us to further consider whether the government's position throughout the litigation was substantially justified or if special circumstances render an award unjust. 28 U.S.C. § 2412(d)(1)(A). For purposes of EAJA, "the position of the United States" includes the decisions of the IJ and the BIA, as well as the litigation position of the Department of Homeland Security. 28 U.S.C. § 2412(d)(2)(D) (" 'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based"); *Singh v. Gonzales*, ___ F.3d ___, No. 04-70300, 2007 WL 2562964, at *1 (9th Cir. Sept. 7, 2007); *Thangaraja v. Gonzales*, 428 F.3d 870, 873-74 (9th Cir. 2005). Thus, the government must show that all of these positions were substantially justified in order to avoid an award of EAJA fees. *Thangaraja*, 428 F.3d at 873-74.

In the context of unopposed remands to the BIA granted by a Circuit Mediator prior to submission to a merits panel, the inquiry related to the substantial justification of the government's position raises difficult issues. In effect, this situation requires the government to justify an Agency position which it has subsequently determined may be problematic, even if the government does not necessarily concede a prejudicial legal error. Moreover, the parties in these situations address the question of substantial justification solely in the papers for the fees, without full briefing on the merits of the underlying case. This scenario makes it difficult for the parties to argue, and for us to evaluate, whether the government's conduct was

substantially justified throughout the Agency proceedings as well as during the litigation before us. *See* 28 U.S.C. § 2412(d)(2)(D).

This problem is further complicated by countervailing policy considerations. On the one hand, we acknowledge that the government should retain the flexibility to voluntarily remand in order to correct prior actions that have been subsequently called into question by emerging case law, claims of changed circumstances, or other novel considerations. *See INS v. Ventura*, 537 U.S. 12 (2002) (per curiam) (reversing court of appeals for failing to remand and to allow the BIA to consider claim of changed country conditions the BIA had not previously adjudicated); *Ren v. Gonzales*, 440 F.3d 446, 448 (7th Cir. 2006) (granting government's motion to remand petition for review to the BIA for reconsideration "in light of the emerging case law" regarding asylum). This gives the Agency an opportunity to address these new factors in the first instance, and the court should avoid discouraging this valuable procedure.

At the same time, we are mindful that "[t]he clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority." *Ardestani v. INS*, 502 U.S. 129, 138 (1991); *see also INS v. Jean*, 496 U.S. 154, 163 (1990) ("[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions."). Congress specifically intended EAJA to be a deterrent for unreasonable agency conduct. *See Jean*, 496 U.S. at 164 n.11 (quoting the statement of purpose for the 1980 amendments to the EAJA at Pub. L. No. 96-481, § 202, 1980 HR 5612).

Moreover, we have acknowledged that the policy goal of EAJA is to encourage litigants to vindicate their rights where any level of the adjudicating agency has made some error in

law or fact and has thereby forced the litigant to seek relief from a federal court. *Thangaraja,* 428 F.3d at 875 n.1. We have further expressed doubt that the government's subsequent request for a remand to reexamine a possible error can "cure" prior unjustified positions in agency proceedings for purposes of EAJA. *Id.* Rather, we have consistently held that regardless of the government's conduct in the federal court proceedings, unreasonable agency action at any level entitles the litigant to EAJA fees. *See* 28 U.S.C. § 2412(d)(2)(D); *Thangaraja*, 428 F.3d at 876-74. The most recent example is *Singh v. Gonzales*, ___ F.3d ___, No. 04-70300, 2007 WL 2562964, at *1, where we awarded EAJA attorney's fees after "[c]onsidering the BIA's position as well as the arguments made in this court" in the substantial justification analysis.

For the type of situation presented here, we conclude that EAJA's standards are best served by considering the likely reason behind the voluntary remand in question. If the government seeks a remand because the record indicates that the Agency's prior action was not consistent with clearly established law at the time the case was before it, then the government's position would not be substantially justified and the petitioner would be entitled to EAJA fees. In other words, the petitioner would be entitled to reasonable attorney's fees where the government requests a remand to reevaluate the prior proceedings due to a misapplication of, or failure to apply, controlling law and where there is no new law or claims of new facts.

Such situations are distinguishable from cases where the government seeks a remand due to intervening case law, because of unclear controlling case law, or where the Agency should have an opportunity to adjudicate a new claim for relief in the first instance. *See, e.g.*, *Ren*, 440 F.3d 446. In cases such as these, the government's position may have been substantially justified at the time the Agency acted, even though subsequent, novel considerations have since undercut the underlying Agency decision. Therefore, the fee applicant

would not be entitled to fees under EAJA in those situations (even if the applicant otherwise prevailed by meeting the *Buckhannon* standard).

This distinction furthers the explicit policy goal of EAJA to discourage unjustifiable government conduct at the agency level. Allowing the government to avoid EAJA fees any time the government voluntarily seeks a remand to address a misapplication of then-prevailing law would neutralize the clear congressional intent that EAJA deter agencies from making those types of errors in the first place.[1] *See Thangaraja*, 428 F.3d at 875 n.1. The government's voluntary request to remand the proceedings to the BIA, while commendable, does not *nunc pro tunc* substantially justify the Agency's conduct for purposes of the EAJA inquiry. At the same time, this distinction does not penalize the government for seeking a remand where intervening case law or new facts have legitimately rendered the underlying result legally suspect or otherwise unjust.

Applying this standard to the fee application in *Li*, we conclude that the government's position was substantially justified because the BIA order was not contrary to clearly established law. The government sought remand to permit the BIA an opportunity to address whether *Matter of M-S* "would be dispositive of this petition for review." However, we have no published opinion reviewing *Matter of M-S*, the substance of Li's claim. Specifically, we have not addressed whether an alien must establish "exceptional circumstances" to be eligible for a reopened removal proceeding when he intends to apply for discretionary relief. In the absence of guidance from this court, the government's position was substantially justified. Moreover, the BIA's decision that Li failed to demonstrate "exceptional circumstances" is not contrary to clearly

---

[1]For the same reason, the government's request for a voluntary remand is not a "special circumstance" that would relieve the government from the applicants' statutory entitlement to EAJA fees.

established law. At the time of the BIA's May 14, 2004 order, clearly established law held that the BIA did not abuse its discretion in finding that a severe asthma attack did not constitute "exceptional circumstances" warranting a reopened proceeding. *See Celis-Castellano v. Ashcroft*, 298 F.3d 888, 892 (9th Cir. 2002). Therefore, the government's position in *Li* is substantially justified and petitioner is not entitled to attorney's fees pursuant to EAJA.

In contrast, in *Janmohamed*, we conclude that the government's position was not substantially justified at all levels of the proceedings. *See* 28 U.S.C. § 2412(d)(2)(D). The government's unopposed motion sought a remand because:

> The [IJ] did not explicitly address which, if any, of the PSGs identified by petitioner were legally cognizable. The IJ, who found petitioner credible, did not explain why, given her evidence, she had not demonstrated well-founded fear. The IJ denied CAT protection based on an incorrect analysis, referring to the past rather than the future. The BIA did not correct these errors.

At the time of the IJ's oral decision on December 9, 2004 and the BIA's February 16, 2006 order, clearly established law held that credible testimony about a genuine fear of harm meets both the objective and subjective prongs of the well-founded fear of persecution inquiry. *See Ladha v. INS*, 215 F.3d 889, 897 (9th Cir. 2000) (observing that objective requirement can be met by submitting credible testimony); *Mejia-Paiz v. INS*, 111 F.3d 720, 723-24 (9th Cir. 1997) (holding that subjective component of well-founded fear standard is met by "candid, credible and sincere testimony demonstrating a genuine fear of persecution"); *Singh v. Moschorak*, 53 F.3d 1031, 1034 (9th Cir. 1995) (holding that victim of past persecution who returned to political work had a subjective well-founded fear of persecution). Similarly, it was clearly established law that CAT relief may be based on

evidence of future torture. 8 C.F.R. § 208.16(c)(3) ("[A]ll evidence relevant to the possibility of future torture shall be considered . . . ."); *see Kamalthas v. INS*, 251 F.3d 1279, 1282-83 (9th Cir. 2001). Because at least some flaws in the IJ's and BIA's orders were legal flaws at the time the case was before the Agency, and not due to some later legal or factual development, we cannot say that the government's position was substantially justified at all levels. *See* 28 U.S.C. § 2412(d)(2)(D). Therefore, the petitioner in *Janmohamed*, as the prevailing party, is entitled to reasonable attorney's fees pursuant to EAJA.

We similarly conclude that the government's position in *Mendoza-Aguilera* was not substantially justified at the BIA level. Mendoza-Aguilera obtained temporary resident status prior to March 1988 and became a legal permanent resident of the United States in September 1989. At the time of his deportation hearing before the immigration judge, Mendoza-Aguilera did not have the period of legal residency required for 212(c) relief. However, during the pendency of his appeal to the BIA, we ruled that the period of temporary resident status would be considered for purposes of a 212(c) claim. *See Ortega de Robles v. INS*, 58 F.3d 1355, 1360-61 (9th Cir. 1995). Moreover, Mendoza-Aguilera acquired the requisite legal domicile in March 1995, long before the BIA issued its January 1996 decision ordering his deportation.

At the time of the BIA's April 2004 order denying Mendoza-Aguilera's motion to reopen in order to apply for a waiver of deportation pursuant to 212(c), it was clearly established that Mendoza-Aguilera had become eligible for 212(c) relief while his appeal was pending before the BIA. *Ortega de Robles*, 58 F.3d at 1360-61 (holding that a legal resident who obtained status pursuant to 8 U.S.C. § 1255a established domicile for purposes of 212(c) relief as of the date of his application for legalization); *see also Forough v. INS*, 60 F.3d 570, 576 (9th Cir. 1995) (holding that the period of legal residency continued to accrue throughout the deportation pro-

ceeding until the BIA rendered its decision). The BIA's January 1996 and April 2004 decisions relied on flawed legal analysis at the time that the case was before the Agency and were not due to some later legal or factual development. Therefore, the government's position was not substantially justified at all levels and Mendoza-Aguilera, as a prevailing party, is entitled to EAJA fees.

## IV. *Reasonable Fees*.

Having determined that the applications in *Mendoza-Aguilera v. Keisler*, No. 04-74457, and *Janmohamed v. Keisler*, No. 06-71068, demonstrate an entitlement to EAJA attorney's fees, these applications are referred to the Appellate Commissioner for purposes of calculating the appropriate attorney's fees awards. *See* 9th Cir. R. 39-1.9.

The application for attorney's fees in *Li v. Keisler*, No. 04-73258, is denied.

COUNSEL

*Li v. Keisler*, No. 04-73258

Patricia Vargas, Alhambra, California, for the petitioner.

Terri J. Scadron, Office of Immigration Litigation, United States Department of Justice, Washington, DC, for the respondent.

*Mendoza-Aguilera v. Keisler*, No. 04-74457

Patricia Vargas, Alhambra, California, for the petitioner.

Patricia A. Smith, Office of Immigration Litigation, United States Department of Justice, Washington, DC, for the respondent.

*Janmohamed v. Keisler*, No. 06-71068

Judith L. Wood, Los Angeles, California, for the petitioner.

Alison R. Drucker, Office of Immigration Litigation, United States Department of Justice, Washington, DC, for the respondent.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2007 Thomson/West.