Irina WAGNER, Plaintiff,

v.

Michael CHERTOFF, Secretary U.S. Department of Homeland Security, Emilio T. Gonzalez, Director, U.S. Citizenship and Immigration Services, Jerry I. Garcia, Officer–in–Charge U.S. Citizenship and Immigration Services, and Robert S. Mueller, III, Director Federal Bureau of Investigation, Defendants.

No. 3:07–CV–502–ECR–VPC.

United States District Court, D. Nevada.

March 30, 2009.

Gregory Romanovsky, Law Office of Boris B. Maiden, Brookline, MA, Ian E. Silverberg, Hardy Law Group, Reno, NV, for Plaintiff.

Gregory W. Addington, U.S. Attorney's Office, Reno, NV, for Defendants.

### Order

EDWARD C. REED, District Judge.

Presently before the Court is Plaintiff Irina Wagner's Motion to Reconsider (# 16) our Order (# 15) denying Wagner's Motion for Attorney's Fees (# 12). Wagner, before becoming a U.S. citizen, brought suit against the United States Citizenship and Immigration Services ("CIS") for a failure to process her naturalization application in a timely manner. Shortly after filing suit, the CIS completed Wagner's application, the parties filed a joint motion to remand the matter to the CIS, and the Court, by minute order, granted the joint motion.

Wagner seeks to recover attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), which permits a court to award attorney's fees and costs to a "prevailing party" in civil actions against the United States. 28 U.S.C. § 2412(a), (d). Wagner filed her "Application for Attorneys' Fees Pursuant to the Equal Access to Justice Act" (# 12) on February 5, 2008. The government filed a Response (# 13) to Wagner's motion on February 20, 2008, to which Wagner filed a Reply (# 14) on March 4, 2008. The Court denied (# 15) the motion (# 12) on August 26, 2008.

Wagner filed a Motion to Reconsider (# 16) on August 28, 2008. The government filed an Opposition (# 17) to the motion on September 10, 2008. There was no Reply. Wagner's motion is ripe, and we now rule on it.

### I. Factual & Procedural Background

The facts of this case are not in dispute. Wagner applied for naturalization

with the CIS California Service Center on September 27, 2005. CIS processed Wagner's application and then forwarded the case to the Reno CIS office for the required face-to-face interview. Personnel from CIS interviewed Wagner on April 6, 2006. After the interview, Wagner's application was sent to the FBI to complete the background security check that is required before the Department of Homeland Security may adjudicate a naturalization application. This sequence of events was atypical: in general, an applicant is not interviewed until the FBI has already completed the background check.

Wagner avers that she made multiple inquiries into the status of her application between April 6, 2006, and October 23, 2007, but to no avail. By statute, if the Department of Homeland Security has not either granted or denied a naturalization application within 120 days of the applicant's examination, the applicant may file suit in federal court. 8 U.S.C. § 1447(b). The court then has jurisdiction either to adjudicate the application or to remand the case with appropriate instructions to the CIS "to determine the matter." *Id.* On October 23, 2007, Wagner filed a Writ of Mandamus/Petition under 8 U.S.C. § 1447(b) with the Court, requesting that the Court grant her application for naturalization or, alternatively, order the CIS to adjudicate her application.

Shortly after Wagner filed suit, the FBI finished her background check. On November 26, 2007, the parties filed a "Joint Motion for Remand Pursuant to 8 U.S.C. § 1447(b)." In full, the joint motion provided as follows:

Pursuant to 8 U.S.C. § 1447(b), the parties in this action, Plaintiff Irina Wagner and defendants Michael Chertoff, Secretary of the United States Department of Homeland Security, *et al.,*

hereby jointly move this Honorable Court to remand this matter to the United States Citizenship and Immigration Services ("USCIS"), so that USCIS can grant Plaintiff's Application for naturalization, and conduct Plaintiff's oath ceremony on December 7, 2007. In support of this motion, the parties state as follows:

1. On or about October 23, 2007, Plaintiff Irina Wagner filed this action.

2. Since that date, USCIS has completed its review of Plaintiff's Application for Naturalization and, if jurisdiction is returned to the agency, would grant the Application and conduct Plaintiff's oath ceremony on December 7, 2007.

3. The governing statute, 8 U.S.C. § 1447(b), provides that, in cases in which the agency has failed to render a decision on an application for naturalization within 120 days of the examination of the applicant, the applicant may file suit in district court requesting to adjudicate the application and "[s]uch court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter."

WHEREFORE, with good cause having been shown, the parties respectfully request that this Court remand this matter to USCIS so that it can grant Plaintiff's Application for Naturalization and conduct Plaintiff's oath ceremony on December 7, 2007.

The Court granted the motion by minute order on the same day. In full, the Order provided as follows:

It is hereby ordered that the Joint Motion (# 9) for Remand Pursuant to 8 U.S.C. § 1447(b), filed on November 26, 2007, is granted. The Clerk shall enter judgment accordingly.

The case was remanded, and on December 7, 2007, Wagner was sworn in as a U.S. citizen.

Wagner then claimed that she was a "prevailing party" under 28 U.S.C. § 2412(d) and was entitled to attorney's fees. She filed a motion for attorney's fees, which the government opposed. The government contended that Wagner was not a prevailing party, and even if she were, the government was substantially justified in its position throughout the litigation; in either case, Wagner would not be awarded the fees she sought.

We denied Wagner's motion. In our Order, filed on August 26, 2008, we stated that in order to be a "prevailing party" under the EAJA, a party must establish that a federal court's actions resulted in a "material alteration of the legal relationship of the parties" and that the alteration was "judicially sanctioned." *See Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604–05, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); *Perez–Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir.2002) (holding that the *Buckhannon* rule governs an application for fees under the EAJA). We deter-

mined that the Court's actions resulted in a material alteration of the legal relationship of the parties, but ultimately concluded that the alteration lacked the "judicial imprimatur" necessary for Wagner to qualify as a prevailing party. Relying on *Carbonell v. INS*, 429 F.3d 894 (9th Cir. 2005), we concluded that Wagner was not a prevailing party because our Order did not incorporate the parties' agreement; thus, a breach of the agreement would not have amounted to a breach of the Court's order. *See id.* at 901. Wagner now asks the Court to reconsider our decision.

## II. Motion for Reconsideration

■ Reconsideration of a motion "is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993). The Court has not been presented with newly discovered evidence; Wagner does not contend that the Court's initial decision was manifestly unjust; there has been no intervening change in controlling law in the Ninth Circuit.[1] Wagner's motion may be grant-

---

1. Wagner argues that under the First Circuit's reasoning in *Aronov v. Chertoff*, 536 F.3d 30 (1st Cir.2008), we should find that she is a prevailing party. We first note that *Aronov* is not controlling law in the First Circuit. On November 14, 2008, the First Circuit agreed to rehear the *Aronov* case en banc. With its decision to take the case en banc, the First Circuit has withdrawn the *Aronov* panel's opinion and vacated the judgment. In light of *Aronov's* withdrawal, at the present time, Wagner has cited no authority, binding or otherwise, that shows our decision was in clear error.

Even had the *Aronov* opinion not been withdrawn, as a First Circuit case, it still could not have served as the basis for finding that our decision in the present case constituted clear error under Ninth Circuit precedent. In any event, before *Aronov's* withdrawal, the

case's utility as persuasive authority was mixed. *Cf. Othman v. Chertoff*, 309 Fed.Appx. 792, 2008 WL 5381344 (5th Cir.2008) (unpublished) (distinguishing the *Aronov* panel's decision); *Shalash v. Mukasey*, 576 F.Supp.2d 902, 909–10 (N.D.Ill.2008) (following the *Aronov* panel's reasoning).

In *Aronov*, the factual scenario was virtually identical to the present case. There, the plaintiff had waited for the government to grant his petition for naturalization and eventually filed suit in federal court under 8 U.S.C. § 1447. After filing suit, the plaintiff and the CIS stipulated to have the case remanded to the CIS so that the CIS would grant the application. With the exception of the plaintiff's name, the stipulation in *Aronov* was identical to the stipulation before this Court. Further, like this Court, the district court in *Aronov* granted the joint motion to

ed then only if we have committed clear error. After re-evaluating and interpreting our own orders, we conclude we have not.

■ The EAJA permits a court to award attorney's fees and costs to a prevailing party, other than the United States, in civil actions against the United States. 28 U.S.C. § 2412(d). To recover under the EAJA, a claimant must show that (1) she is a prevailing party, (2) an award would not be unjust, and (3) the application for fees is timely. *See id.; Li v. Keisler*, 505 F.3d 913, 916 (9th Cir.2007). The United States may defend against an application for fees by showing that its position throughout the litigation was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The parties do not dispute that an award would be just or that the application for fees was timely; however, they disagree about whether Wagner is a "prevailing party" and whether the government's position was "substantially justified."

## A. Prevailing Party

■ To be a "prevailing party" under the EAJA, a party must establish that a federal court's actions resulted in a "material alteration of the legal relationship of the parties" and that the alteration was "judicially sanctioned." *Buckhannon*, 532 U.S. at 604–05, 121 S.Ct. 1835; *see Perez–Arellano*, 279 F.3d at 794 (holding that the *Buckhannon* rule governs an application for fees under the EAJA).

---

remand the case by minute order. There, however, the district court awarded the plaintiff attorney's fees. On appeal, a majority of a three-judge panel affirmed, concluding that the district court's order was the "functional equivalent of a consent decree," and hence was sufficient for declaring the plaintiff a prevailing party under the EAJA. Chief Judge Lynch dissented, reasoning in part that be-

## 1. Material Alteration of the Legal Relationship

■ In order to find that the parties' legal relationship has changed, a "petitioner's success in obtaining the desired relief from the federal court is critical . . ., regardless of whether the federal court's order addressed the merits of the underlying case." *Li*, 505 F.3d at 917. Of course, relief other than a judgment on the merits or a consent decree may be sufficient for a party to establish that it is a prevailing party. *Id.* (citing *Carbonell*, 429 F.3d at 899). For example, a stipulation may materially alter the parties' legal relationship if the stipulation requires the defendants "to do something directly benefitting the plaintiff[ ] that they otherwise would not have had to do." *Carbonell*, 429 F.3d at 900 (citing *Richard S. v. Dep't of Dev. Servs.*, 317 F.3d 1080, 1087 (9th Cir.2003)) (alteration in *Carbonell* ).

Here, the joint motion to remand materially altered the parties' legal relationship because it required the defendants to do something that benefitted the plaintiff that they otherwise would not have had to do. The defendants did not have to agree to remand the case to the CIS; they could have continued to litigate the case in federal court. Instead, they chose to ask the Court to remand the action and return jurisdiction to the CIS so that Wagner could be sworn in as a U.S. citizen. Without the return of jurisdiction to the CIS, the CIS would have been devoid of authority to act on Wagner's petition absent direction from the Court. *See United States*

---

cause the minute order did not incorporate the parties' agreement, the order was not the functional equivalent of a consent decree.

As explained below, contrary to the district court's interpretation of its own order in *Aronov*, we conclude that we did not incorporate the joint motion to remand in our minute order.

*v. Hovsepian,* 359 F.3d 1144, 1159 (9th Cir.2004) (en banc) (stating that a district court has "exclusive jurisdiction" over applications brought before the court under 8 U.S.C. § 1447(b)). By stipulating to the remand, jurisdiction was returned to the CIS, and Wagner received that which she sought. The joint motion to remand therefore altered the parties' legal relationship.

### 2. Judicial Imprimatur

■ A material alteration in the parties' legal relationship alone does not make a party a prevailing party; *Buckhannon* also requires that this material alteration have sufficient "judicial imprimatur." *Buckhannon,* 532 U.S. at 605, 121 S.Ct. 1835. That is, a district court must place "its stamp of approval on the relief obtained." *Labotest, Inc. v. Bonta,* 297 F.3d 892, 895 (9th Cir.2002). When a district court "incorporates the terms of a voluntary agreement into an order, that order is stamped with sufficient 'judicial imprimatur' for the litigant to qualify as a prevailing party for the purpose of awarding attorney's fees." *Carbonell,* 429 F.3d at 901.

■ There is insufficient judicial imprimatur, however, if the court's order does not incorporate the parties' agreement. In that case, a breach of the agreement is not a breach of the court's order. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 381, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (so stating). And a "judge's mere awareness and approval of the terms of [a] settlement agreement do not suffice to make them part of his order." *Id.*

■ Similarly, it is not enough for the plaintiff's suit merely to bring about "a voluntary change in the defendant's conduct." *See Buckhannon,* 532 U.S. at 601, 121 S.Ct. 1835. That is, a party does not prevail simply because her suit is the "catalyst" for the change. *Id.* at 605, 121 S.Ct. 1835 ("We think ... the 'catalyst theory'

... lacks the necessary judicial imprimatur on the change.").

In *Carbonell,* a native and citizen of the Philippines, Carbonell, was the subject of a deportation order entered *in absentia.* 429 F.3d at 896. After learning of the deportation order, Carbonell sought to reopen his case, which both an immigration judge ("IJ") and the Board of Immigration Appeals ("BIA") denied. *Id.* Carbonell filed a motion to reconsider with the BIA. *Id.* The BIA did not act on the motion, and Carbonell was later arrested and detained in a federal facility for more than ten months. *Id.* Carbonell filed a petition for writ of habeas corpus in the district court, which the district court determined it had jurisdiction to hear. *Id.* at 897. Within two weeks of the district court's ruling on the jurisdictional issue, the government and Carbonell stipulated to a stay of deportation, and the district court incorporated that stipulation into an order. *Id.* Less than a month later, the BIA granted Carbonell's motion to reconsider and allowed him to reopen his case. *Id.* Subsequently, on Carbonell's request, the district court dismissed Carbonell's petition. *Id.* Arguing that the stipulation to the stay of deportation made him a prevailing party under the EAJA, Carbonell sought attorney's fees, which the district court denied.

On appeal, the Ninth Circuit reversed. The Ninth Circuit reasoned that Carbonell met the *Buckhannon* criteria. *Id.* at 899. The court rejected the notion that one must achieve an enforceable judgment on the merits or a court-ordered consent decree in order to be a prevailing party; rather, a party need only show that it meets the two *Buckhannon* requirements. *Id.* The court found that the joint stipulation to a stay of departure materially altered the parties' legal relationship, meeting the first *Buckhannon* criterion. *Id.* Additionally, the court found that the dis-

trict court's incorporation of the stipulation in its order was sufficient for satisfying the second *Buckhannon* criterion. *Id.* at 901. The Ninth Circuit held that when a district court "incorporates the terms of a voluntary agreement into an order, that order is stamped with sufficient 'judicial imprimatur' for the litigant to qualify as a prevailing party for the purpose of awarding attorney's fees." *Id.* at 901.

■ Here, the Court's actions do not supply the necessary "judicial imprimatur" for finding Wagner a prevailing party under the EAJA. The only action that the Court took was to accept the joint motion of the parties. Unlike in *Carbonell,* the Court did not incorporate the terms of the joint motion into our Order; we simply remanded the matter to the CIS as the parties requested. While we referenced the motion by title, such a reference is not the equivalent of incorporating that motion into an order. The Court did not condition the granting of our Order on the granting of the naturalization application. The Court did not order the case remanded to the CIS with any particular instructions. Nor did the Court make "the parties' obligation to comply with the terms of the ... agreement" part of our Order. *See Kokkonen,* 511 U.S. at 381, 114 S.Ct. 1673. Had the Court done any of these things, the result here could have been different.

Although the parties' joint motion to remand altered their legal relationship, this change lacked the requisite judicial imprimatur necessary to make Wagner a prevailing party under the statute. Instead, Wagner's lawsuit was the catalyst behind the CIS taking action on her application. Wagner applied for citizenship in September 2005. She was interviewed in April 2006. After hearing nothing from the CIS, she filed suit in October 2007, seeking to force the government's hand. Approximately one month later, the FBI finished its background check and suddenly the CIS was ready to naturalize Wagner. The obvious inference is that Wagner's suit brought about the change in the status of her application. But this scenario fits within the contours of the catalyst theory: Wagner's suit brought about a voluntary change on the part of the government. This is not sufficient to make her a prevailing party under the EAJA. *See Buckhannon,* 532 U.S. at 603, 121 S.Ct. 1835.

## B. Substantially Justified

■ The government may defend against a claim under the EAJA by showing that its conduct "at each stage of the proceedings," *Corbin v. Apfel,* 149 F.3d 1051, 1052 (9th Cir.1998), was "substantially justified," 28 U.S.C. § 2412(d). The government's conduct is "substantially justified" if it has "a reasonable basis in law and fact." *Corbin,* 149 F.3d at 1052.

In *Li v. Keisler,* three immigration judges and the Board of Immigration Appeals rendered decisions adverse to three petitioners. 505 F.3d at 916. The petitioners appealed their cases to the Ninth Circuit. *Id.* While the appeals were pending, the government moved to remand each case to the BIA or to an IJ. *Id.* In each case, the Circuit Mediator granted the motions to remand and filed remand orders to that effect. *Id.* In two of the three cases, the Ninth Circuit found that the Circuit Mediator's remand orders sufficed to entitle the petitioners to attorney's fees under the EAJA. *Id.* at 921.

■ The court acknowledged that there is a tension between allowing the government flexibility in voluntarily remanding cases and eliminating financial disincentives for those who defend against unjustified governmental action. *Id.* at 918–19. Ultimately, the court concluded that the EAJA was "best served by considering the likely reason behind the volun-

tary remand in question." *Id.* at 919. Thus, where the government seeks to remand a case because a prior action is inconsistent with clearly established law, then attorney's fees should be granted. *Id.* Where the government seeks to remand a case because of a change in case law, however, attorney's fees are not appropriate. *Id.*

■ Here, the government's actions were not inconsistent with clearly established law. The parties jointly moved to remand the case to the CIS on the basis that the CIS would grant Wagner's naturalization application because the FBI finished its background check. Once the FBI completed the background check, there was nothing more to delay approving Wagner's application.

The parties dispute whether the government could have approved Wagner's application prior to the FBI completing its background check. The government argues that the FBI must complete a background check before naturalizing an applicant. *See* 8 C.F.R. § 335.2(b) (stating that a "full criminal background check on an applicant" includes any one of three confirmations from the Federal Bureau of Investigation). Wagner contends that only "an employee of the [CIS,] or of the United States designated by the Attorney General," and not necessarily the FBI, must complete the background check. *See* 8 U.S.C. § 1446(a) ("Before a person may be naturalized, an employee of the Service, or of the United States designated by the Attorney General, shall conduct a personal investigation of the person applying for naturalization . . . ."). We need not resolve this dispute. At the time of Wagner's application, it was not inconsistent with clearly established law for the CIS to hold off on approving Wagner's application until the FBI had completed its background check.

Moreover, as soon as the government obtained all of the necessary information to approve Wagner's application, stipulating to remand the case was the most efficient option for naturalizing Wagner. Once Wagner filed suit in federal court, the CIS had no jurisdiction to adjudicate the claim. At that point, 8 U.S.C. § 1447(b) vested the district court with exclusive jurisdiction over the naturalization application until the court either determined the matter itself or remanded the matter with instructions to the CIS. *Hovsepian*, 359 F.3d at 1159. Under either § 1447(b) option having the Court determine the matter or remanding with instructions the government would have had to wait until the Court evaluated the merits of the action. Rather than wait for the district court, the government agreed to stipulate to have the matter remanded to the CIS.

Related to this, the government appears to have done all it could have been expected to do to expedite Wagner's application. The government interviewed Wagner before the FBI completed its background check presumably because the Reno CIS office had less of a backlog than the FBI. This sequence of events, while out of order from that contemplated by the federal regulations, apparently was meant to benefit the processing of Wagner's application. Had the government waited to interview Wagner until the FBI had completed her background check, Wagner would have had no recourse in the court because the 120–day period within which the CIS must act is not triggered until the interview takes place. *See* 8 U.S.C. § 1447(b). The government should not be penalized for seeking to assist Wagner.

If we were to accept Wagner's logic, it is hard to see what the government could have done differently to avoid paying attorney's fees once Wagner filed suit. The

government agreed to a joint motion to remand, and yet Wagner now seeks attorney's fees. If Wagner were entitled to fees because of the government's actions here, then we would discourage the government from cooperating with plaintiffs in the future. By so doing, we would encourage two potentially undesirable results: (1) the CIS could start to refuse to interview candidates until after the FBI completes its background check; or (2) the CIS could start to include language in all joint motions or stipulations requiring the plaintiff to waive any right to attorney's fees. The first result would further slow the naturalization process for other applicants. The second result could force all future plaintiffs to waive statutory rights, contrary to Congress' wishes as expressed by the EAJA.

Such results run counter to encouraging efficient outcomes and settlements. There are many cases, such as the present one, where the government may wish to remand a case after suit was filed, but where the government's actions were still substantially justified prior to and following the filing of suit. We reject the attempt to put the government between Scylla and Charybdis.

The better view of the case is that the Court's minute order lacked the required judicial imprimatur on the legal change in relationship between the parties, and in any event, the government was substantially justified in its actions.

### III. Conclusion

We are cognizant of the fact that it took the government well over two years to act on Wagner's naturalization application, during which time Wagner was left in a state of limbo waiting for the government to do something. And it is likely no matter of coincidence that the government acted on Wagner's application shortly after she filed suit. But simply inducing the government to act by filing a lawsuit does not entitle one to attorney's fees under the EAJA.

Here, Wagner was not a prevailing party because the material change in the legal relationship between Wagner and the CIS lacked the necessary judicial imprimatur. Further, the government's position was substantially justified throughout the course of the litigation. An award of attorney's fees in this case is inappropriate.

***IT IS THEREFORE HEREBY ORDERED THAT*** the Plaintiff's Motion to Reconsider (# 16) is **DENIED.**