Oscar CORTES, Plaintiff,

v.

Linda SWACINA, District Director, United States Citizenship & Immigration Services, Miami District; and Robert S. Mueller, III, Director, Federal Bureau of Investigation, Defendants.

Case No. 08–20926–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Nov. 12, 2008.

Stephen Matthew Bander, Bander & Associates PA, Miami, FL, for Plaintiff.

## ORDER

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Magistrate Judge Stephen T. Brown's Report and Recommendation (the "Report") [D.E. 17], issued on October 17, 2008. On June 11, 2008, Plaintiff filed his Motion for Attorney's Fees [D.E. 8], and the Court referred the Motion to Judge Brown under 28 U.S.C. § 636(b)(1)(B). In the Report, Judge Brown recommends granting Plaintiff's Motion. On October 27, 2008, Defendants filed Objections to the Report [D.E. 18]. The undersigned has conducted a *de novo* review of the record and fully concurs with Judge Brown's recommendations.

Plaintiff filed a naturalization application pursuant to 8 U.S.C. § 1445 on December 6, 2005. On March 31, 2006, Plaintiff was examined by a U.S. Citizenship and Immigration Services ("USCIS") officer at the Miami office pursuant to 8 C.F.R. § 335.2.[1] Plaintiff passed the English, U.S. history, and government components of the examination, but the officer requested additional evidence. A determination on Plaintiff's application was not rendered at that time.

As part of the naturalization application process, USCIS requests a criminal background check or "name check" be complet-

---

1. Section 335.2 provides, in pertinent part

(a) General. Subsequent to the filing of an application for naturalization, each applicant shall appear in person before a Service officer designated to conduct examinations pursuant to § 332.1 of this chapter. The examination shall be uniform throughout the United States and shall encompass all factors relating to the applicant's eligibility for naturalization. The applicant may request the presence of an attorney or representative who has filed an ap-

pearance in accordance with part 292 of this chapter.

(b) Completion of criminal background checks before examination. The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed. . . .

ed by the Federal Bureau of Investigations ("FBI"). Although regulations require the background check to be completed before an applicant is examined by USCIS, in this case that did not occur. *See* 8 C.F.R. § 335.2. The FBI received the name check request for Plaintiff's naturalization application from USCIS on December 29, 2005, but the check was not completed before Plaintiff's March 31, 2006 examination.

Over two years after the initial examination, Plaintiff's application was still pending, and on April 4, 2008, Plaintiff filed his Complaint [D.E. 1] pursuant to 8 U.S.C. § 1447(b), seeking a determination from USCIS. Section 1447(b) provides,

> If there is a failure to make a determination under section 1446 of this title before the end of the 120–day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

On April 7, 2008, a Notice of Appearance was filed on behalf of Defendants [D.E. 3]. Later the same day, the Court entered an Order (the "April 7 Order") [D.E. 4] remanding the case to USCIS and requiring Plaintiff to serve the Complaint and the Order on Defendants. The April 7 Order required Defendants to make a determination on Plaintiff's application within 120 days. The Complaint and Summonses were served on the U.S. Attorney for the Southern District of Florida on April 10, 2008 [D.E. 20–2], on the District Director of USCIS on April 11, 2008 [D.E. 20–2], on the FBI on April 15, 2008 [D.E. 22], and on Attorney General Michael Mukasey on April 18, 2008 [D.E. 20–2, 21].

The FBI completed the name check in accordance with its normal, as opposed to expedited, procedures on April 15, 2008 (*See Decl. of Michael Cannon* [D.E. 14–2] at ¶ 43), more than two years after Plaintiff's examination and a week after Plaintiff's Complaint was filed and remanded to USCIS. The results of the name check were disclosed to Plaintiff on April 22, 2008, and on May 22, 2008, USCIS approved Plaintiff's naturalization application. Plaintiff then filed a copy of the Form N–400 Approval in this Court on May 30, 2008 [D.E. 5].

On June 11, 2008, Plaintiff filed the Motion for Attorney's Fees [D.E. 8] seeking a fee award under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The EAJA provides,

> a court shall award to a *prevailing party* other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified* or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added). Plaintiff argues he was a prevailing party in this action due to the Court's April 7 Order remanding the case to USCIS. Furthermore, Plaintiff argues Defendants' position was not substantially justified under existing case law in this District.

In the Report, Judge Brown agrees with Plaintiff and finds an attorney fee award proper under the EAJA. Rejecting Defendants' position that processing Plaintiff's application was voluntary, Judge

Brown found Plaintiff was a prevailing party. Judge Brown also rejected Defendants' contention that their pre-litigation delay in processing the application was substantially justified, noting other similar cases in this District that have found such delays unjustified.

In their Objections to the Report [D.E. 18], Defendants first argue they were never properly served with the Complaint and Summonses in this case, and thus the Court did not have jurisdiction over them. Subsequent to Defendants filing the Objections, however, Plaintiff provided proof of service as to each Defendant, as stated. Defendants appear to concede that service was perfected.

Defendants next contest Judge Brown's conclusion that Plaintiff falls within the definition of a prevailing party under the EAJA, asserting the same arguments rejected by Judge Brown in the Report. The undersigned agrees with Judge Brown's analysis. In *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), "[t]he Court explained that a 'prevailing party' is one who has been awarded some relief by the court; i.e., some court-ordered change in the legal relationship between the plaintiff and the defendant." *Morillo–Cedron v. Dist. Director for U.S. Citizenship and Immigration Servs.*, 452 F.3d 1254, 1257 (11th Cir.2006) (citing *Buckhannon*, 532 U.S. at 604, 121 S.Ct. 1835). In *Buckhannon*, the Supreme Court rejected the "catalyst theory," under which a party "prevailed" if the filing of a lawsuit brought about a voluntary change on the part of the defendant. Instead, a party prevails only if the court order carries with it "the necessary judicial *imprimatur* on the change" in conduct. *Buckhannon*, 532 U.S. at 605, 121 S.Ct. 1835.

Judge Brown found the Court's April 7 Order remanding the case to USCIS and requiring a decision on Plaintiff's naturalization application within 120 days sufficiently altered the relationship between the parties and carried sufficient judicial *imprimatur* to satisfy the standard set out in *Buckhannon*. Defendants appear to argue that because the undersigned issued the Order remanding the case before Defendants had an opportunity to take a position in the proceedings, their processing of Plaintiff's application was voluntary rather than motivated by the Order. And, as stated, a voluntary change in position in response to a plaintiff's complaint is not enough for the plaintiff to be found the "prevailing party." In essence, Defendants argue now, as they did before Judge Brown, that Plaintiff cannot be found to be a prevailing party unless Defendants resisted Plaintiff's Complaint in some way. The undersigned agrees with Judge Brown's conclusion that there is no such requirement for a Plaintiff to qualify as a prevailing party.

As stated, under *Buckhannon*, there must be a legal change in the relationship between the parties, and the judicial action must have been a cause of that legal change. Irrespective of whether Defendants opposed Plaintiff's Complaint, Plaintiff's legal relationship *vis-à-vis* Defendants changed after entry of the April 7 Order. Defendants were under court order to reach a decision on Plaintiff's application by a date certain, which they ultimately did, resulting in approval of Plaintiff's application. Plaintiff's first claim seeks, in the alternative, "the Court to remand the matter, with appropriate instructions to USCIS" under Section 1447(b). (*Compl.* at ¶ 37). The second claim is a request pursuant to the Mandamus Act, 28 U.S.C. § 1361, that the Court compel USCIS and the FBI to "complete processing of Plaintiff's" application. (*Id.* at ¶ 41). Ostensibly, the April 7 Order

granted Plaintiff's claims, in part. It is difficult to see how this is not a change in the legal relationship between the parties.

■ Defendants also argue the adjudication of Plaintiff's application was voluntary, apparently on the basis that the FBI was unaware of the April 7 Order when it completed the name check.[2] Defendants assert the FBI's conclusion of its name check occurred under normal circumstances because the FBI did not employ "expedited" procedures. According to Defendants, the April 7 Order had no effect on the decision regarding Plaintiff's application, and thus lacked judicial *imprimatur*.

The undersigned does not agree, and instead concurs with Judge Brown's conclusions. Judge Brown noted that USCIS failed to follow its own regulations and examined Plaintiff before the FBI completed the name check. *See* 8 C.F.R. § 335.2. The processing of the naturalization application was not, therefore, "routine." In any event, as Judge Brown noted, Defendants received the April 7 Order before a decision was rendered on the application, and the April 7 Order required them to render such a decision within 120 days irrespective of whether they were following "routine" procedures. Defendants did not object to entry of the April 7 Order. In sum, Defendants' Objections do not present grounds for reexamining Judge Brown's conclusion that Plaintiff is a "prevailing party" within the meaning of the EAJA.

■ Defendants also contest Judge Brown's conclusion that there was no "substantial justification" for Defendants' conduct in this case. Judge Brown recog-

nized Defendants took no position in this litigation because the case was remanded before they responded to the Complaint, but that Defendants' extended delay in rendering a decision on Plaintiff's application was not substantially justified. Defendants argued the backlog in processing applications and name checks was a substantial justification for the delay. Judge Brown noted this argument had been rejected by judges in this District as well as in others. Specifically, Judge Brown cited Chief Judge Federico Moreno's decision in an analogous situation where the government made an identical argument. *See Silebi De Donado v. Swacina*, Case No. 07–20190–CIV–MORENO [D.E. 26]. In *Silebi De Donado*, as here, the government failed to follow regulations and examined the plaintiff a year before the FBI name check was completed. Judge Moreno found this failure was not substantially justified. The undersigned agrees with Judges Moreno and Brown.

Defendants argued before Judge Brown that the term "examination" in Section 1447, which triggers the 120–day period, refers to the entire process of evaluating the application rather than USCIS' initial interview of the applicant. Judge Brown rejected this argument pointing again to the same argument asserted by the government in *Silebi De Donado* and rejected by Judge Moreno. *See id.* at 1362–1363 ("the majority view in the Southern District of Florida is that 'examination' refers to the initial USCIS interview. The EAJA precludes an award of attorney's fees to a plaintiff when the United States' position is *substantially* justified. The Court finds that Defendants' position does not rise to

---

2. The Court observes that in spite of Defendants' contention that the FBI was unaware of the April 7 Order, a Notice of Appearance was filed on behalf of all Defendants, including the FBI, before the April 7 Order was docketed. There is no doubt that counsel for

the FBI received the Order before the name check was completed and before a decision on Plaintiff's application was rendered. Electronic delivery of the April 7 Order to Defendants' counsel is reflected in the records of the CM/ECF filing system.

that level.") (emphasis in original) (citations omitted). In their Objections, Defendants point out there is support for the "minority" position they advance, that the examination period encompasses the entire process. The undersigned is again persuaded by Judges Moreno and Brown that, in this District, Defendants' position is not *substantially* justified.

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Judge Brown's Report **[D.E. 17]** is **AFFIRMED AND ADOPTED** in total as follows:

(1) In accordance with the reasoning stated in Judge Brown's Report and herein, Plaintiff's Motion for Attorney's Fees **[D.E. 8]** is **GRANTED.**

(2) Should the parties fail to reach agreement concerning the amount of fees requested by Plaintiff, they may submit supplemental memoranda within fourteen (14) calendar days of the date of this Order. The matter is REFERRED to Judge Brown for a determination of that issue.

## *REPORT AND RECOMMENDATION*

STEPHEN T. BROWN, United States Magistrate Judge.

This matter is before this Court on Plaintiff's Motion for Attorneys Fees (D.E. 8). The Court has considered the motion, the response, the reply and all pertinent materials in the file.

### *Facts*

Plaintiff commenced this action on April 4, 2008 by filing a Request for Hearing

("Complaint") pursuant to 8 U.S.C. § 1447(b).[1] Plaintiff alleged that he was interviewed by a Naturalization Examiner on March 31, 2006, and that more than 120 days had elapsed since the examination without Defendant United States Citizenship and Immigration Service ("USCIS") having rendered a decision on Plaintiff's application for naturalization.

On April 7, 2008 at 8:39 a.m., the U.S. Attorneys Office filed a Notice of Appearance on behalf of the Defendants. At 12:53 p.m. that same day, the Honorable Cecilia M. Altonaga entered an Order remanding the case to the Defendants to make a determination on Plaintiff's application for naturalization within 120 days of the issuance of the Order. According to the Response, Plaintiff provided the U.S. Attorney with a copy of the Order on the dame day it was issued. Resp. p. 1. However, Defendants further state that it was not until April 10, 2008, that "the United States Attorney's Office, Southern District of Florida, accepted service of the Complaint and Summons." Resp. p. 2.

On April 15, 2008, Defendant FBI completed the name-check of Plaintiff in accordance with its "normal" (as opposed to expedited) protocol with the National Name Check Program. See Cannon Decl. ¶ 43.[2] On April 22, 2008, the results of the name check were disclosed to Defendant USCIS. On May 22, 2008, Defendant USCIS approved Plaintiff s application for naturalization and on May 30, 2008, Plaintiff filed his Notice of Filing Copy of Form N–400 Approval.

---

1. This section provides as follows:
   (b) Request for hearing before district court If there is a failure to make a determination under section 1446 of this title before the end of the 120–day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction

over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

2. The name check request with respect to Plaintiff had been received by the FBI from USCIS on or about December 29, 2005. Cannon Decl. ¶ 43.

On June 11, 2008, Plaintiff filed this Motion for Attorney's Fees pursuant to the Equal Access to Justice Act ("EAJA").

### Discussion

The EAJA provides for an award of fees to a "prevailing party" "incurred by that party in any civil action ... including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (2006).

### I. *Prevailing Party*

Defendants initially argue that Plaintiff is not entitled to a fee award because he is not a "prevailing party." A "prevailing party" is "one who has been awarded some relief by the Court," and a plaintiff must receive "at least some relief on the merits of his claim before he can be said to prevail." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health and Human Resources*, 532 U.S. 598, 603–04, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). In *Buckhannon*, the Court rejected the "catalyst theory" of awarding fees to a plaintiff, and found that there must be a *"judicially sanctioned* change in the legal relationship of the parties" in order for fees to be properly awarded. *Id.* at 605, 121 S.Ct. 1835 (emphasis added).

In support of their position, Defendants distinguish several of the cases cited by Plaintiff in which fees were awarded, by arguing that in those cases "the Defendants resisted Plaintiff s position invoking (if not provoking) the coercive power of the Court," by, for example, answering the complaint or filing a motion to dismiss. Resp. p. 3–4. Defendants further maintain that in this case, "Plaintiff notified (informally and formally) the Defendants of the action only after the Court had already ordered the case remanded," and "the United States Attorney's Office, Southern District of Florida, did not accept service of the Complaint and Summons until three days after the case had been remanded." *Id.* at 4. Although there is nothing in the court record (other than Defendants' Response) which shows when service was "accepted" by the Defendants, there is a Notice of Appearance filed by the United States Attorney's Office on behalf of the Defendants on April 7, 2008 at 8:39 a.m., which precedes the Court issuing its Order remanding the case and ordering Defendants to make a determination on Plaintiff's petition. On that date, Defendants were at least "informally" notified of the Complaint, and, according to the Response, later that day were notified of the Order. Although it is true that the matter was remanded before Defendants were formally served and had an opportunity to file a response to the complaint, that fact is not dispositive. *See Shalash v. Mukasey*, 576 F.Supp.2d 902, 909 (N.D.Ill.2008) (stating that "the fact that Defendants were never required to file a written response to Plaintiff's original petition does not change [the analysis of whether the parties' legal relationship changed from the court's mandate to the agency to expedite processing of the plaintiff s application] because the violation of Section 1447 was clear on its face.").

Defendants argue that their action in approving the Plaintiff's application was a "voluntary" act which achieved the result desired by Plaintiff, and as such Plaintiff should not be considered a "prevailing party." *See Morillo–Cedron v. District Director for the U.S. Citizenship & Immigration Servs.*, 452 F.3d 1254, 1257 (11th Cir. 2006). This Court rejects that position. In *Morillo–Cedron*, the Court issued an order to show cause why mandamus relief required should not be granted, and the Government subsequently voluntarily

granted the plaintiffs the relief they sought. 452 F.3d at 1254. This is distinguishable from the instant case in which the court actually ordered Defendants to perform within a specific time period.

In deciding to remand Plaintiff Cortes' case, Judge Altonaga followed the reasoning applied in *Silebi De Donado v. Swacina*, 486 F.Supp.2d 1360 (S.D.Fla.2007), where Chief Judge Moreno, in reviewing a similar complaint, denied the USCIS's motion to dismiss and remanded the case, ordering the government to make a decision on the plaintiff's application within 120 days from the date of that order. *Id.* at 1365. In subsequently granting the plaintiff s motion for attorney's fees, Chief Judge Moreno found the decisions in *Buckhannon* and *Morillo–Cedron* to be distinguishable because in those cases the defendants' actions were "purely voluntary," whereas in the case before it, the Court's order "created a material alternation of the legal relationship of the parties by imposing an obligation upon the Defendants to comply by a specific deadline." *Silebi De Donado v. Swacina*, 486 F.Supp.2d at 1361 (S.D.Fla.2007) (citing *Alghamdi v. Ridge*, No. 05–14047, 2006 WL 5670940, at *6, 2006 U.S. Dist. LEXIS 68498, at *20 (N.D.Fla.2006)).[3] The same reasoning applies here.

Defendants cite *Feldman v. Gonzales*, 1:07–CV–1694–RWS, 2008 WL 915524 (N.D.Ga. April 2, 2008), where the court had entered an order remanding the plaintiff's application to the USCIS with instructions that the USCIS expeditiously reach a determination on Plaintiff's application upon the completion by the FBI of Plaintiff's name and background check, and to provide a status report regarding the application within ninety (90) days of the entry of the order. *Id.* at *1. Before the end of the 90 days, the application was approved. *Id.* In denying the plaintiff's motion for fees, the court found that its order "did not alter the position of the USCIS. Rather, the Order contemplated that the USCIS would not act on the application until completion of the name and background check by the FBI," and to the extent the order "acted as a catalyst to move Plaintiff s application along, that was insufficient to make plaintiff a prevailing party." *Id.* at *2.

The instant case is clearly distinguishable. Although Defendant USCIS maintains that it also was merely waiting for the FBI check to be completed, and the application was approved once that "routine" procedure was followed, Judge Altonaga's Order did not give the Defendants the leeway to wait until whatever date that check may have been completed. Rather, the Court's Order, like Judge Moreno's Order, changed the legal relationship between the parties in that it *required* action

---

**3.** In *Alghamdi*, the court additionally found that the defendants could not have acted "voluntarily" because once the plaintiff applied to the court for relief, the court obtained exclusive jurisdiction to act, and the defendants could only subsequently act if the court remanded the matter to the defendants for further action. 2006 WL 5670940, at *6, 2006 U.S. Dist. LEXIS 68498, at *17. Although the Eleventh Circuit has not yet addressed this issue, and the district courts are in conflict, the Fourth and Ninth Circuits have agreed with this position. *See Etape v. Chertoff*, 497 F.3d 379 (4th Cir.2007); *United States v.* *Hovsepian*, 359 F.3d 1144 (9th Cir.2004). *See also Aronov v. Chertoff*, 536 F.3d 30, 39 (1st Cir.2008) ("because of jurisdictional element, the district court could have reasonably concluded that it was ultimately the remand order, not the agency's concession, that brought about the material change in the parties' relationship and 'place[d] the weight of judicial authority' on the agreed-upon alteration in [plaintiff's] legal status") (citation omitted); *but see Fatayer v. Swacina*, No. 2:07–cv–527–FtM–29DNF, 2008 WL 4279688, at *3 (M.D.Fla. Sept. 15, 2008).

in 120 days, without referencing the status of any FBI background check.

Defendants argue that the Court's Order in this case "had no evident impact upon the FBI's completion of its name-check duties or of the USCIS adjudication (approval) of Plaintiff's application for naturalization," maintaining that the FBI followed its "normal" procedure in completing its non-expedited protocol, then followed its "normal" procedure in reporting its findings to the USCIS. Resp. p. 5. Although USCIS maintains that it then followed "routine" procedure in adjudicating Plaintiff's application, this "routine" runs counter to USCIS regulations, which state that the examination (which triggers the 120 day period) will take place "only after the Service has received a definitive response from the [FBI] that a full criminal background check of an applicant has been completed." 8 C.F.R. § 335.2(b) (2006). *See also Silebi De Donado,* 486 F.Supp.2d at 1364.

Why Plaintiff's examination took place in 2006 is unexplained. However, what is a fact is that Plaintiff's application was not adjudicated until *after* the Court issued its Order requiring the USCIS to do so within a specific time frame. What Defendants choose to ignore is that they were on notice of and under compulsion of the Court's Order, regardless of whether they were also complying with their "routine" procedure. As the court noted in *Alghamdi,* "[s]ection 1447(b) is ... not concerned with whether USCIS voluntarily grants or denies an application for naturalization; rather, § 1447(b) is concerned solely with the *timeliness* of that decision." 2006 WL 5670940 at *5, 2006 U.S. Dist. LEXIS 68498, at **15–16 (emphasis in original); *see also Aboushaban v. Mueller,* 475 F.Supp.2d 943 (N.D.Cal.2007); *Shalash v. Mukasey,* 576 F.Supp.2d 902, 908–10 (N.D.Ill.2008).

The Court finds that Plaintiff is a "prevailing party" for purposes of the EAJA.

## II. *Substantial Justification*

Defendants next argue that their position in Plaintiff's case was substantially justified. In order for this to be so, Defendants must show that their position was "justified in substance or in the main-that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *see also United States v. Jones,* 125 F.3d 1418, 1425 (11th Cir. 1997).

As noted, Defendants took no position in the actual case. As to their pre-litigation conduct, Defendants argue that their conduct was reasonable because of the mandate that they conduct an extensive "examination" process and the time required for background checks, which has created a backlog. This argument was rejected by Chief Judge Moreno in *Silebi De Donado,* in which the Court noted that, as in this case, Defendants violated their own regulations by having a naturalization examination of the plaintiff prior to the completion of the background check. *Silebi De Donado v. Swacina,* 486 F.Supp.2d at 1362 (S.D.Fla.2007).

In rejecting the same argument, the First Circuit Court of Appeals stated that "[i] light of the 120–day statutory directive, the agency's long delay (over four times the statutory period), and the absence of any evidence that the government tried to expedite [plaintiff s] application to comply with the statute, the government's conduct toward [plaintiff] can only be classified as unreasonable and not substantially justified." *Aronov,* 536 F.3d at 48; *see also Aarda v. United States Citizenship and Immigration Svcs.,* No. 06–1561 (RHK/AJB), 2008 WL 974916, at *5 (D.Minn. April 8, 2008) (rejecting "back-

log" argument). In this case, Defendants offer no reasons why Plaintiff's background check was more extensive than any other, and in fact, emphasize that the FBI followed its "normal," as opposed to "expedited" fingerprint check with respect to Plaintiff Cortes, even after it became aware of the Court's remand order.

 Defendants additionally argue that the term "examination" in § 1447 (which triggers the 120–day period) does not refer to the agency's initial interview of the applicant, but rather encompasses the entire process of determining whether the application should be granted. Chief Judge Moreno also rejected this argument, based on the majority view in the Southern District of Florida that "examination" refers to the initial USCIS interview. *Id.* at. p. 7. Chief Judge Moreno has since reaffirmed that finding. *See Diaz v. Gonzalez*, No. 07–22360–CIV–MORENO, 2007 WL 4463492, at *2 (S.D.Fla. Dec. 17, 2007) (citations omitted); *see also Walji v. Gonzales*, 500 F.3d 432 (5th Cir.2007) (surveying district court decisions and adopting majority view).

This Court rejects Defendants' arguments and finds that the Defendants' conduct was not substantially justified.[4]

### *RECOMMENDATION*

Based on the foregoing, this Court respectfully recommends that Plaintiff's Motion for Attorneys Fees be **GRANTED**, and that Defendants be allowed ten (10) days in which to file a supplemental response addressing the amount of fees requested.

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Cecilia M. Altonaga, United States District Judge

for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger*, 847 F.2d 745 (11th Cir.1988), *cert. denied*, 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988).

**DONE AND ORDERED** in Chambers at Miami, Florida, this *17th* day of October, 2008.

---

**4.** The Court additionally finds that there are no "special circumstances" which would make an award of attorneys fees in this case unjust.